604 P.2d 660

**STATE of Arizona, Appellee,**

v.

**Nathan J. WARREN, Sr., Appellant.**

**Nathan J. WARREN, Sr., Appellant,**

v.

**Jerry HILL, Sheriff of Maricopa County, et al., Appellees.**

**1 CA–CR 3221, 1 CA–CR 3222 and 1 CA–CIV 4256.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 11, 1979.

Rehearing Denied Nov. 28, 1979.

Review Denied Dec. 18, 1979.

Charles F. Hyder, Maricopa County Atty. by Frank L. Murray, Deputy County Atty., Phoenix, for appellee State.

Stewart & McLean, Ltd. by Harry A. Stewart, Jr. and William H. McLean, Phoenix, and Grutman, Morrison & Schafrann by Norman Roy Grutman, New York City, for appellant Warren.

Michael D. Hawkins, U. S. Atty., George B. Nielsen, Jr., Asst. U. S. Atty., Phoenix, for appellees.

## OPINION

OGG, Chief Judge.

The thrust of this appeal rests on the allegation that the appellant/defendant, Nathan J. Warren, Sr., did not get the benefit of his plea agreement which he claims he entered into in good faith and fully performed to the best of his ability. We must determine if the trial court erred in finding that the defendant breached the plea agreement, thus freeing the state from any obligations under such agreement.

In September 1976, the defendant was indicted by the Maricopa County grand jury for twenty counts of grand theft by false pretenses. In February 1977, a second complaint was filed, charging the defendant with the bribery of a public official and conspiracy. In 1975 the defendant had been tried and convicted in the United States District Court for extortion and had received a twelve year sentence. He was released on bond pending appeal when both of the state criminal cases were filed.

In February of 1977, the defendant developed a serious heart condition that required coronary bypass surgery. At about that time, plea negotiations were started which lasted over several months, culminating in two plea agreements being formulated in May 1977 among the defendant, the state, and the federal government. Essentially the state plea agreement which is the subject of this litigation included the following general terms:

"1. Warren would plead guilty to all 22 felony counts then pending against him in state court;

2. Sentencing on these pleas would be delayed for approximately six months;

3. When sentenced, Warren would receive a sentence that would include a term of imprisonment not to exceed, in length, any prison term he might ultimately receive in federal court on his extortion conviction, and additionally probation for up to 20 years, including specified terms of probation. The state sentence would not only be concurrent with any federal sentence, but would also be served in a federal minimum security institution;

4. During the six month period before sentencing Warren was to cooperate with both the federal and state authorities, and provide information to them;

5. Warren would receive 'use' immunity for all crimes he might disclose while cooperating with and being interviewed by governmental authorities, said immunity to include immunity for homicide, and he would also receive 'transactional' immunity for all crimes he might disclose except homicide."

Following the defendant's guilty pleas, he was interrogated three times by state and federal authorities in June of 1977. At the conclusion of these interrogations, the state and federal prosecutors terminated any further questioning because it was their belief that the defendant was not being truthful and they were not receiving any reliable

information. The defendant objected to such termination and expressed a desire to further cooperate. After being advised that the county attorney considered the defendant to have breached the plea agreement, the defendant filed a motion to compel the state to comply with the plea agreement. At the same time, the defendant filed a civil suit in the Maricopa Superior Court to compel compliance with the plea agreement. In that suit, Michael D. Hawkins, the United States Attorney, Joel D. Sacks, an Assistant United States Attorney, Charles F. Hyder, the Maricopa County Attorney, Frank Murray, a Deputy Maricopa County Attorney, and Jerry Hill, Sheriff of Maricopa County, were all named as codefendants. The civil case was consolidated with the criminal cases in the trial court and in this appeal.

In August of 1977, an evidentiary hearing was held on the defendant's motion to compel compliance with the plea agreement. Following completion of the hearing and submission of written memoranda and oral argument, the trial judge ruled that it was the defendant, Warren, not the state or federal prosecutors, who had breached the plea agreement, and therefore denied the motion. Thereafter the defendant was sentenced to consecutive terms in the Arizona State Prison totaling 54 to 60 years. This appeal followed.

In the original briefs, the defendant raises eight issues, and at oral argument an additional issue concerning a recent decision by the United States District Court of Arizona was presented. The first four issues all go to the manner in which evidence was received and the sufficiency of such evidence to support the judgment. These issues as stated by the defendant may be summarized as follows:

1. Did the court err in following the evidentiary standards of Rule 26.7 of the Arizona Rules of Criminal Procedure? (Pre-sentencing hearing procedures)
2. Did the court err in allowing an accountant to summarize accounting records as business records without

producing such records for inspection by the defendant?
3. Did the court err in placing the burden of proof on the defendant to show compliance with the plea agreement?
4. Did the court err in finding a breach by the defendant when such a breach was minor and caused by the defendant's weakened physical condition?

All of these issues are intertwined and will be considered under a general discussion of the sufficiency of the evidence.

### THE SUFFICIENCY OF THE EVIDENCE ISSUES

The defendant argues that the trial court erred in ruling the proceedings would be governed by Rule 26.7 of the Arizona Rules of Criminal Procedure, thereby permitting the state to present hearsay and other inadmissible evidence. The defendant contends his burden was met when he proved the full scope of the plea agreement. Once this was done, it then became the burden of the state to prove a breach of the plea agreement by the defendant. The defendant further argues that the standard of proof was a preponderance of the evidence, and that only competent evidence could be used for the final determination.

The state argues that although this was not a regular presentence hearing as contemplated by Rule 26.7, Arizona Rules of Criminal Procedure, there was no error in following the guidelines of Rule 26.7. The state contends such hearing was tied in with pre-sentencing considerations with the same relevant principles of criminal procedure. Rule 26.7(a) reads:

"When the court has discretion as to the penalty to be imposed, it may on its own initiative, and shall on the request of any party, hold a pre-sentencing hearing at any time prior to sentencing."

Rule 26.7(b) sets out the evidentiary rules for such a hearing:

". . . At the hearing any party may introduce any reliable, relevant evidence, *including hearsay*, in order to show ag-

gravating or mitigating circumstances, to show why sentence should not be imposed, or to correct or amplify the presentence, diagnostic or mental health reports, the hearing shall be held in open court and a verbatim record of the proceedings made." (Emphasis added)

■ It is our opinion that Rule 26.7 was designed to deal only with presentencing hearings and has no application to the hearing on defendant's motion to compel compliance with a plea agreement.

■ After such a determination, we now must turn to an examination of the hearing to see if there is reversible error in the manner in which the hearing was conducted. The law is clear that all parties to a plea agreement are bound by its terms. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Stone*, 111 Ariz. 62, 523 P.2d 493 (1974). Arizona has no specific rule of procedure to govern the manner in which this hearing should be conducted, and there is no Arizona case law on this issue. The case law from other jurisdictions on this issue is sparse, and what guidance can be gleaned can be briefly summarized. The test to be applied in determining if there has been a breach of a plea agreement is an objective one and does not depend upon prosecutorial motivations or justifications for the failure of performance. *United States v. Brown*, 500 F.2d 375 (4th Cir. 1974). The question as to whether the defendant failed to perform under a plea agreement cannot be determined unilaterally by the government officers, but only on the basis of adequate evidence by the court. *United States v. Simmons*, 537 F.2d 1260 (4th Cir. 1976). It is the sole duty of the court, as trier of fact, to determine if there has been a compliance with a plea agreement. An evidentiary hearing must be afforded, with the defendant given an opportunity to call witnesses, cross-examine adverse witnesses, and have all other due process rights. *State v. Curry*, 49 Ohio App.2d 180, 359 N.E.2d 1379 (1976). The Ohio appellate court appears to be the only court to also speak on the issue of burden of proof in such a hearing. In the

*Curry* case, the court held the state must prove the defendant's failure to perform the agreement by a preponderance of the evidence. We are in agreement with these general guidelines.

■ In applying these legal principles to the hearing conducted in this case, we find no reversible error. The hearing was evidentiary in nature, with all parties calling witnesses and cross-examining adverse witnesses. The determination that the defendant had failed to comply with the plea agreement was not determined unilaterally by the government officers but on the basis of evidence presented to the trial court in a seven day hearing. At the conclusion of the hearing, the trial court determined by a preponderance of the evidence that the defendant had breached the cooperation clause of the plea agreement.

The plea agreement in this case was set out in two letters, both dated May 27, 1977, from Charles F. Hyder, Maricopa County Attorney, to Harry Stewart, attorney for the defendant. One of these letters, Exhibit 14, sets out pertinent portions of the state plea agreement as follows:

"It is our understanding that Mr. Warren has stated that he will provide information that can be corroborated to the satisfaction of the U. S. Attorney on the February 1975, killing of Ed Lazar, corruption of local, state and federal public officials and a variety of land fraud matters. Any plea to charges arising out of the Maricopa County Attorney's Office must be independent of any arrangement made with federal authorities concerning Mr. Warren's providing testimony, dismissing his appeal, or agreeing to 'do his time' in any particular federal institution. In other words, Mr. Warren's pleas of guilty on our charges are not contingent on his cooperation with federal authorities. He must plead to the County grand theft, bribery and conspiracy counts with 'no strings attached.'

Realizing, however, his concern over the balance of his life, we would agree that if Mr. Warren fulfills his arrangement with the U. S. Attorney's Office to their satis-

faction concerning the aforesaid matters, this office would then agree to his spending his term in a federal institution and in a place and manner which federal authorities designate. Only in the event of his cooperation, as described above, and upon the written advice of Joel Sacks, Assistant United States District Attorney, with the acceptance by Frank Murray, Deputy Maricopa County Attorney, would the Maricopa County Attorney's Office recommend, and Mr. Warren would receive, a sentence, the terms of which would be satisfied by serving the time in a federal institution, said time in an imposition of sentence in the United States v. Warren, Cause No. 75–3183 and 75–3509."

The second letter, Exhibit 13, describes the immunity Mr. Warren was to receive in his testimony and opens with a paragraph that sheds some light on the nature of this rather unusual plea agreement:

"As a part of an agreement between your client, Mr. Nathan Jacques Warren, Sr., and the U. S. Attorney's Office, your client is expected to cooperate with both the Maricopa County Attorney's Office and the U. S. Attorney's Office in the giving of information, providing of corroboration and documentation, and testifying on behalf of either or both offices. It is the intent of this letter to describe the immunity offered by the Maricopa County Attorney's Office in connection with such statements and/or testimony."

From the testimony and the plea agreement it was clear that the defendant had the duty to cooperate with both the federal and state prosecutors in providing accurate information that could be corroborated to the satisfaction of the prosecutors.

At the three sessions where Mr. Warren was questioned, he took the position that he was a legitimate business man and never participated in any Arizona land frauds. In answer to a question by Mr. Joel Sacks, Assistant United States Attorney, relative to whether the defendant had any connection with the operation of Great Southwest Land & Cattle Company, the defendant an-

swered: "I never owned, controlled, managed, or had anything to do with the operation of Great Southwest." There was competent evidence admitted showing that the defendant was deeply involved in the affairs of Great Southwest.

The defendant also gave testimony concerning the Lazar homicide; however, testimony was presented that none of the information could be corroborated and that none of the phone numbers supplied checked out.

■ This court has reviewed the entire transcript. In the presentation of conflicting testimony, there was some hearsay and improper evidence admitted into evidence. The court erred when it allowed Alan V. Funk, an accountant for the Federal Bureau of Investigation, to give certain business record summaries without establishing a proper foundation. *See* Rule 44(q), Arizona Rules of Civil Procedure. Casting aside such improper evidence, there still remains a preponderance of competent evidence to support the finding of the trial court that the defendant breached the plea agreement in giving false and unreliable information to the prosecutors.

■ An appellate court will not reverse a case tried to the trial court without a jury for errors in receiving improper matters into evidence provided there is sufficient competent evidence to sustain the judgment. The fact a trial judge allows such improper evidence to be offered and received will not require a reversal for the appellate court will assume, unless it affirmatively appears to the contrary, that the trial judge only considered the competent evidence in arriving at the final judgment. *Bonine v. Bonine*, 90 Ariz. 319, 367 P.2d 664 (1961); *American Eagle Fire Ins. Co. v. Van Denburgh*, 76 Ariz. 1, 257 P.2d 856 (1953). There is competent evidence to support the conclusion that the prosecutors acted in a reasonable manner when they determined that the defendant was not complying with the spirit of the plea agreement.

■ In our review of the record, we do not find that the court placed an improper

burden on the defendant. The court allowed the defendant to show the terms of the agreement and the defendant's contentions that he complied with such agreement. The state had to carry the burden to prove the defendant breached the agreement, and the trial court so determined after hearing all the evidence. The two prosecutors directly involved in the plea agreement both testified that the information given by the defendant was unreliable and could not be corroborated. We do not find the trial court erred in rejecting the defendant's contention that any discrepancies in his testimony were minor and unimportant.

The trial court, after a protracted adversary hearing that produced volumes of conflicting evidence, made findings that the defendant breached the plea agreement and that the breach was substantial. Where the trial court's findings and judgment are supported by reasonable evidence or based upon reasonable inferences drawn from conflicting evidence, such findings and judgment will not be disturbed on appeal. *O'Hern v. Bowling*, 109 Ariz. 90, 505 P.2d 550 (1973); *United Sec. Corp. v. Anderson Aviation Sales Co., Inc.*, 23 Ariz.App. 273, 532 P.2d 545 (1975).

## THE QUASHING OF SUBPOENAS ISSUE

As the fifth issue raised, the defendant contends the trial court erred when it quashed the defendant's subpoenas issued to two Internal Revenue Service agents on the grounds that their testimony was "privileged" under federal law. The defendant intended to have these two agents testify to the fact he had cooperated with the Internal Revenue Service in an earlier investigation of a tax case. He wanted this testimony to demonstrate his ability and willingness to cooperate with the government if given the opportunity.

The federal and state appellees argue that the trial court properly quashed the subpoenas under the provisions of applicable federal law. Under federal statutes there is a prohibition of unauthorized disclosure of federal information. *See* 18 U.S.C. § 1905. Internal Revenue Service employees are specifically prohibited from disclosing tax information. 26 U.S.C. § 7213(a)(1). Disclosure can only be made with the prior approval of the Commissioner of Internal Revenue. Title 26, Section 6103(a) of the United States Code mandates that "return information" shall be confidential unless an exception appears in the federal tax statute. "Return information" is defined in Section 6103(b)(2)(A) as "any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . ."

In our review we find no reversible error in the ruling of the trial court in quashing the subpoenas. In this sensitive area of federal immunity, it appears the trial judge may have erred in not authorizing limited testimony relative to the defendant's prior cooperation in a former tax case. However, if such be error, we find that it was harmless for this testimony was of a collateral nature in connection with an earlier case in which the defendant was facing a federal charge.

## DISMISSAL OF FEDERAL DEFENDANTS ISSUE

The sixth argument raised concerns the propriety of the trial judge's order dismissing the federal defendants, United States Attorney Michael D. Hawkins and Assistant United States Attorney Joel D. Sacks from the civil action. The defendant contends that in the federal lawsuit to force compliance with the plea agreement, Hawkins and Sacks were successful in getting the case dismissed on the theory the State of Arizona was the proper forum to litigate these issues. The defendant now argues that under the doctrine of judicial estoppel, the federal defendants are subject to the jurisdiction of the Maricopa County Superior Court. Additionally, the defendant claims these federal defendants are now estopped

404

to claim the defense of "sovereign immunity".

Hawkins and Sacks argue that sovereign immunity extends to actions against agencies and officers when the conduct in question is on behalf of the government. *See Special Prosecutor of State of New York v. U. S. Attorney*, 375 F.Supp. 797 (S.D.N.Y.1974). Clearly the actions of Hawkins and Sacks in this plea agreement were taken pursuant to their federal positions and on behalf of the government of the United States. Any person attempting to sue a federal agency or officer must first establish that such claim is covered by a specific statutory authorization to sue the United States. The absence of such consent is a fundamental jurisdictional defect. *U. S. v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Hammond v. U. S.*, 388 F.Supp. 928 (E.D.N.Y.1975). The sovereign immunity of the United States can only be waived by Congress and the doctrines of waiver or estoppel cannot be used against the federal government when it raises the sovereign immunity defense. *U. S. v. Hennen*, 300 F.Supp. 256 (D.Nev.1968).

The defendant has not cited any federal statute that would grant the Maricopa County Superior Court jurisdiction over such a claim raised against Hawkins and Sacks, and it is our opinion that the trial court did not err in ordering the dismissal.

## SENTENCING ISSUES

The defendant in his seventh argument contends that the consecutive sentences of 9 to 10 years on the first five counts violate the Arizona proscription against "double jeopardy and double punishment." In support of this argument, the defendant cites Article II, Section 10 of the Arizona Constitution, which reads:

"No person shall . . . be twice put in jeopardy for the same offense."

Additionally, the defendant relies upon A.R.S. § 13–1641, which reads:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The defendant relies upon *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971), and contends that under the "identical elements test", we must eliminate the elements in one charge and determine whether the facts left on the other charges would support convictions on any other charges. *See State v. Mitchell*, 106 Ariz. 492, 478 P.2d 517 (1970). He reasons that there was only one false or fraudulent representation made and it was the same representation in all twenty counts; that since A.R.S. § 13–661B provides that any false or fraudulent misrepresentation or pretense shall be treated as continuing, there was actually only one crime committed.

The state argues that the twenty counts of grand theft by false pretenses to which the defendant pled guilty were based on the sale of twenty separate forty-acre parcels where twenty separate payments were made on twenty separate purchase and sales agreements, although all the sales negotiations were made at the same time. The state points up the fact that all Arizona cases where the "identical elements test" was used involved cases where the defendant was charged under more than one statute and the court had to determine if the elements of the crimes as charged overlapped.

After a study of the cases and statutes, it is our opinion that the "identical elements test" has no application to this case where the defendant is charged with multiple counts based upon the same statute. It is our opinion that as the defendant received money on the twenty different sales contracts on the separate dates, he committed a separate punishable criminal act, even though all contracts stem from one initial negotiation where the fraudulent representations were made. *See People v. Ellison*, 26 Cal.App.2d 496, 79 P.2d 732 (1938).

The defendant makes a further argument that the lengthy consecutive sentences imposed in this case, in view of the defendant's age (63 years) and his poor health, constitute cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution and Article II, Section 15 of the Arizona Constitution.

The appellate courts of this state have consistently held that a sentence imposed within the statutory limits, where the statute is not unconstitutional, does not constitute cruel and unusual punishment. *State v. O'Neill*, 117 Ariz. 343, 572 P.2d 1181 (1977); *State v. Burrell*, 106 Ariz. 100, 471 P.2d 712 (1970); *State v. Starks*, 20 Ariz. App. 274, 512 P.2d 37 (1973).

There is no contention that the statute under which the defendant was sentenced is unconstitutional. The sentences imposed were within the statutory limits, and in view of the defendant's prior criminal history, we find no abuse of discretion.

## PREJUDICIAL PRE–SENTENCE REPORT ISSUE

The defendant contends that the sentences imposed should be set aside because the pre-sentence report submitted to the court included highly prejudicial matter. He points to the fact that the pre-sentence report contained numerous references to crimes that the defendant was either never charged with or to charges in which he has been acquitted.

A pre-sentence report was prepared pursuant to the dictates of Rule 26.4, Arizona Rules of Criminal Procedure. The defendant filed a notice of objections to certain portions of the report, pursuant to Rule 26.8, Arizona Rules of Criminal Procedure, and the trial court conducted a three-day pre-sentencing hearing under the provisions of Rule 26.7, Arizona Rules of Criminal Procedure.

The strict rules of evidence do not apply to matters submitted in a pre-sentencing report. *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974), our Supreme Court held that it was not error for a trial court to consider illegally seized evidence at a hearing in aggravation prior to sentencing. In the case of *State v. Dixon*, 21 Ariz.App. 517, 521 P.2d 148 (1974), the defendant's present contention was raised. In that case the appellant contended that his sentence should be vacated because there were improper references in the pre-sentence report of his prior contacts with the police wherein no formal charges were ever made or proven. In that case the court found it was not error for the court to consider such matters taken from the police reports. In a discussion of this issue, the court said:

> "The weight to be given the report is for the trial judge and we need not assume he was adversely influenced by any statement which might have been improper."

*Id.* at 519, 521 P.2d at 150.

We find no reversible error in the pre-sentence report issue as this issue was heard and disposed of by the trial court.

## THE UNITED STATES DISTRICT COURT DECISION ISSUE

At the oral argument, counsel for the defendant based the main thrust of the argument on an unpublished opinion and order entered February 1, 1979 by the United States District Judge for the District of Arizona in the federal case involving the federal plea and sentencing agreement arising out of the fact situation presented in this appeal. The District Judge made extensive findings and concluded that Warren did not breach the federal plea agreement and that such agreement must be enforced. It was argued that the federal decision on the federal plea agreement was binding upon the Arizona courts, and that Judge Thompson's earlier decision finding that the defendant had breached the state plea agreement was now a nullity.

We have found no pertinent authority supporting such an argument. Both the United States District judge and the Maricopa County Superior Court judge in their capacities sat as trial judges and within their separate jurisdictional capacities

**406**

found the respective facts after separate evidentiary hearings. The issues presented and the evidence admitted differed in the two hearings. The defendant's plea agreements made with the state and federal authorities although intertwined were separate agreements. The federal agreement was never reduced to writing; the state agreement was formulated by the exchange of letters between the defendant and the state prosecutors. One of these letters, Exhibit 14, emphasizes the fact that the plea agreement made with the state prosecutors was to be considered separate from the federal plea agreement. The pertinent portion of the letter states:

"Any plea to charges arising out of the Maricopa County Attorney's Office must be independent of any arrangement made with federal authorities  .  .  ."

We find that the Maricopa County Superior Court judge had jurisdiction to decide the issues presented in this case and was not bound by the later federal court disposition. The defendant's convictions and sentences are affirmed.

JACOBSON, P. J., and CONTRERAS, J., concur.