Riley Melton CARTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–88–418.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1989.

Rehearing Denied Oct. 11, 1989.

Whit Pate, Poteau, for appellant.

Robert H. Henry, Atty. Gen., Weldon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice Presiding Judge:

Appellant, Riley Melton Carter, was convicted by jury for the crime of Unlawful

Cultivation of Marijuana (63 O.S.1981, § 2–501) in LeFlore County District Court, Case No. CRF–86–265. The trial judge imposed the sentence in accord with the jury's verdict of ten (10) years imprisonment and a fifty thousand dollar ($50,000.00) fine. From this judgment and sentence Appellant has perfected this appeal. We affirm.

While conducting aerial surveillance in eastern Oklahoma, Oklahoma Bureau of Narcotics and Dangerous Drugs (OBNDD) Agent, Chris Smith, flew over Appellant's ranch on September 25, 1986, and observed a patch of marijuana growing approximately 200 yards from the house. Well worn paths connected the residence to two outbuildings and the marijuana patch. Officer Smith radioed this information and directions to Appellant's ranch to a second agent on the ground. He then completed an affidavit and obtained a search warrant for Appellant's ranch, residence and outbuildings. When they arrived at Appellant's ranch, the OBNDD agents discovered that the marijuana which Officer Smith had observed earlier that day had been pulled up and taken away. Agents followed fresh tire tracks and discovered a stack of some seventy-five (75) marijuana plants under a grove of oak trees, one-quarter mile south of the harvested plot. Agents also discovered an irrigation system at the marijuana patch, and a second patch closer to the house. During the search of the house, agents discovered dried marijuana in a plastic bag and various personal records of the Appellant. The Appellant himself was searched and agents discovered keys to a flatbed truck and to the gate between the marijuana patch Officer Smith saw from the air and the grove of trees where the crop was neatly stacked. Marijuana leaves and seeds were found on the flatbed truck which was parked outside Appellant's residence.

■ In his first proposition of error, Appellant argues the affidavit submitted to the magistrate in support of the search warrant did not show probable cause for the search of Appellant's residence. We disagree. Appellant bases his argument entirely on state law, relying on *Anderson*

*v. State,* 657 P.2d 659 (Okl.Cr.1983) and 22 O.S.1981, § 1222. *Anderson,* is inapplicable to the instant case. In *Anderson* we found no probable cause for the search of Anderson's residence for three foot high marijuana plants where the officer's only ground for searching the home was the fact he saw marijuana growing in the garden. 657 P.2d at 662. In sharp contrast to the affidavit in *Anderson,* Officer Smith's affidavit advised the magistrate he had served as an agent with the Oklahoma Bureau of Narcotics and Dangerous Drugs for four (4) years, that he personally observed marijuana growing on Appellant's ranch, and that in addition to the marijuana itself, growing records, records of account, books pertaining to the cultivation of marijuana, banking records and articles of personal property tending to establish the identity of the person in control of the marijuana cultivation were all evidence of the commission of a crime. Officer Smith further attested that based on his experience, these items were frequently found in the residence and buildings near a cultivated marijuana crop.

Officer Smith supplied the issuing magistrate with facts based on his direct observation, the type of crime at hand, the nature of the records sought, as well as the normal inferences as to where a marijuana grower might likely keep these records. Officer Smith's affidavit thus satisfied the conditions of 22 O.S.1981, § 1222 and established probable cause for the search of Appellant's home. *See Beeler v. State,* 677 P.2d 653, 658 (Okl.Cr.1984).

Appellant next argues the State presented insufficient evidence to support his conviction of Unlawful Cultivation of Marijuana. Specifically, Appellant asserts the State failed to prove beyond a reasonable doubt that he knowingly permitted marijuana to be cultivated on his land. We disagree.

■ The evidence regarding Appellant's knowledge of the cultivation of marijuana on his ranch was, not surprisingly, all circumstantial. Circumstantial evidence is sufficient to support a conviction when, considered in the light most favorable to

the State, the evidence and its inferences tend to exclude every reasonable hypothesis other than guilt. *Rudd v. State*, 649 P.2d 791 (Okl.Cr.1982). The State's evidence established Appellant lived on the property, one marijuana patch was watered by an underground irrigation system and a system of well worn paths connected Appellant's residence with both of the marijuana patches on the ranch. Further, Appellant had keys in his pocket to a flatbed truck on which marijuana leaves and seeds were found and to the gate through which the vehicle used to move the uprooted plants from the garden to the stand of oaks had to pass. Also, the marijuana plants were found neatly stacked under Appellant's oak trees in a place where they could not be burned but where they might not be seen from the air. We find this evidence sufficient to allow a rational trier of fact to exclude every reasonable hypothesis except that Appellant knowingly permitted marijuana to be cultivated on his land.

■ Appellant's final proposition of error is that his right to due process under both the Oklahoma and United States Constitutions was violated when the State revoked its offer made during plea negotiations after Appellant did not meet the terms of the plea negotation agreement. The record reveals Appellant never entered a plea in this case. An agreement was reached during plea negotiations in which both Appellant and the State agreed Appellant would pay a fine of five thousand dollars ($5,000.00) and receive a suspended sentence of five (5) years imprisonment. Appellant failed to raise the money, did not enter a plea and proceeded to trial. He argues that but for his poverty, he would have received a much more favorable sentence.

Appellant's argument misses the mark. To support his position, Appellant relies on three cases decided by the United States Supreme Court, *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed 2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), none of which is appli-

cable to this case. In each of these cases the court held a convicted criminal defendant could not be imprisoned for failure to pay a fine. In *Bearden* the Supreme Court held a sentencing court cannot revoke probation for failure to pay a fine and make restitution absent a finding the defendant was responsible for the failure to pay, or that alternative forms of punishment were inadequate. 461 U.S. at 667, 103 S.Ct. at 2069. Appellant did not enter a plea in this case and did not receive a suspended sentence. In *Williams* the defendant was convicted of petty theft and received the maximum sentence possible under state law, one (1) year imprisonment and a five hundred dollar ($500.00) fine. When he could not pay the fine, under state law he was kept in the county jail beyond the original year, to "work off" the fine at a rate of five dollars ($5.00) per day. The Court held this statutory scheme constituted impermissible discrimination based on ability to pay. 399 U.S. at 241, 90 S.Ct. at 2022. In *Tate* the indigent petitioner received nine (9) traffic fines in Houston, Texas, totalling $425.00. When he could not pay the fines, he was sentenced to a municipal prison farm to "work off" the fine at a rate of $5.00 per day. The court held that, as in *Williams*, this punishment violated the Equal Protection clause. 401 U.S. at 396–7, 91 S.Ct. at 669–70.

While a plea was being negotiated, the Appellant herein was not convicted, fined, or imprisoned for failure to pay a fine. Appellant herein has cited no authority, and indeed we find none, to hold a defendant who enters into plea negotiations, but does not enter a plea, has an enforceable agreement with the State when he does not perform the conditions of the plea bargain agreement. The courts which have considered this question, hold uniformly that the prosecution is not obligated to perform as promised when the defendant breaches the plea bargain agreement. *See e.g. United States v. Wood*, 780 F.2d 929 (11th Cir. 1986), *cert. denied*, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); *United States v. Donahey*, 529 F.2d 831 (5th Cir.1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50

L.Ed.2d 91 (1976); *United States v. Simmons,* 537 F.2d 1260 (4th Cir.1976); *State v. Warren,* 124 Ariz. 396, 604 P.2d 660 (Ct.App.1979); *Gamble v. State,* 95 Nev. 904, 604 P.2d 335 (1979) (percurium); *State v. Hall,* 32 Wash.App. 108, 645 P.2d 1143 (1982). The State's withdrawal of its offer does not, as Appellant suggests, reach constitutional proportions. We find the parties proceeded properly to trial when the defendant did not perform the terms of the plea bargain agreement.

Finding no error justifying reversal, we AFFIRM the judgment of the trial court.

PARKS, P.J., and BRETT and LUMPKIN, JJ., concur.