IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,              )
                                   )     2 CA-CR 2006-0049
                    Appellee,      )     DEPARTMENT B
                                   )
        v.                         )     O P I N I O N
                                   )
THOMAS GREG McCURDY,               )
                                   )
                    Appellant.     )
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20051301

Honorable Ted B. Borek, Judge

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED FOR RESENTENCING

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Alan L. Amann                           Tucson
                                                   Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Scott A. Martin                                             Tucson
                                                   Attorneys for Appellant

E S P I N O S A,  Judge.

¶1        Appellant Thomas McCurdy was convicted after a jury trial of robbery and

prohibited possession of a weapon.  The court sentenced him to an aggravated prison term

of six years for robbery, to be served concurrently with a presumptive, 4.5-year term for

prohibited possession. He argues the trial court erred when it: (1) admitted hearsay evidence, (2) denied his motion for judgment of acquittal that claimed there was insufficient evidence he had a prior felony conviction, (3) used a foreign conviction that was invalid for use in Arizona to enhance his sentence, (4) based his sentence on improper aggravating circumstances, and (5) refused to correct the presentence report. We affirm his convictions but remand the case for resentencing in light of the trial court's failure to determine whether the foreign conviction properly could be used to enhance his sentence and its reliance on an improper aggravating circumstance in pronouncing sentence.

**Factual and Procedural Background**

¶2 We state the evidence in the light most favorable to sustaining the convictions. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). In February 2005, a man approached a bank teller wearing a gray-blue, wool "ski cap and large sunglasses and a coat." The man started to hand the teller a note across the counter, on which the teller could read the word "rob" or "robbery." As the teller reached for the note, the man retrieved it and said, "Put all the money on the counter, and I don't want no dye."[1]

¶3 The teller activated a silent alarm, which alerted security staff and started cameras recording his station. He then gave the man all the money in his cash drawer, about $1,300, including several "bait bills" and a security tracking device. After the man left the bank, law enforcement officers eventually traced the tracking device to a white minivan

---

[1]"Dye" is presumably a "dye pack," a type of security device used to mark and apprehend bank robbers.

2

belonging to McCurdy. Inside the van, officers found clothing similar to what the robber was described as wearing, a tan vest with a bundle of money and the tracking device inside, a silver revolver, and a hat. Witnesses recalled McCurdy's driving the van "kind of fast" to his motor home shortly after the robbery.

¶4    At trial, to prove McCurdy had a prior felony conviction both as an element of the prohibited possessor charge and for sentence enhancement and aggravation, the state produced a certified copy of documents related to a 1997 California felony conviction. After redacting the documents to omit prejudicial information about the details of the conviction, the trial court admitted them into evidence. The exhibit identified the California felon in question as Thomas Greg McCurdy with a date of birth of September 12, 1958. It also included the felon's driver's license number and a signature of the felon appearing to read "T.G. McCurdy" together with a Louisiana address. The California documents do not contain a photograph, fingerprint, or even a physical description of the felon.

¶5    Former jail supervisor Sean Stewart testified—based on a standard form jail admission document and having viewed a video of McCurdy's booking process—that McCurdy had arrived at the Pima County jail on April 15, 2005, reporting his birth date as September 12, 1958, and his weight as 195 pounds. Over McCurdy's hearsay objections, the trial court also admitted a Pima County jail "Inmate Personal Property Receipt" for a Thomas McCurdy dated the same date. This receipt bears a signature that appears similar to the signature of the felon convicted in California, although likewise contains no photograph, physical description, or fingerprint connecting it to McCurdy. The jury found the existence

3

of the prior conviction had been proven beyond a reasonable doubt and found McCurdy guilty of prohibited possession and robbery. The trial court adopted the jury's finding that McCurdy had a prior conviction and used that conviction to both enhance and aggravate McCurdy's robbery sentence.

**Hearsay Objections**

¶6        McCurdy first contends the trial court erred by admitting the Pima County jail property receipt and allowing Stewart to testify to the information contained on the Pima County jail admission form over his hearsay objections.[2] "We review a trial court's ruling on the admissibility of evidence for a clear abuse of discretion." *State v. King*, 213 Ariz. 632, ¶ 7, 146 P.3d 1274, 1277 (App. 2006).

¶7        Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c),   To be admissible, a court must find that the out-of-court statement fits within one of the many exceptions to the rule against hearsay. *State v. Tucker*, 205 Ariz. 157, ¶ 41, 68 P.3d 110, 118 (2003). Whether business records are sufficiently reliable to satisfy the hearsay exception in Rule 803(6), Ariz. R. Evid., , is for the trial court to determine in the exercise of its sound discretion. *Larsen v. Decker*, 196 Ariz. 239, ¶ 19, 995

---

[2]Although McCurdy argued in his opening brief the court also erred if the evidence was admitted under Rule 803(8), Ariz. R. Evid., , the state in its answering brief and McCurdy in his reply brief agree this exception does not apply and we therefore do not consider it.

P.2d 281, 285 (App. 2000); *State v. Petzoldt*, 172 Ariz. 272, 275, 836 P.2d 982, 985 (App. 1991).

¶8      McCurdy argues the property receipt, and the information from the jail admission form as relayed by Stewart, were inadmissible hearsay. At trial, McCurdy objected to both documents on hearsay grounds, and the judge deferred ruling until after he heard Stewart's testimony to determine whether appropriate foundation had been provided. When Stewart testified, McCurdy again objected, claiming Stewart could not lay the necessary foundation for the information he repeated. The trial court eventually admitted the property receipt as a business record, but sustained the objection to the jail admission form on the ground that it was "a current jail card" and, thus, unduly prejudicial under Rule 403, Ariz. R. Evid., Stewart's testimony reciting the contents of the form was not stricken, however. The next day, McCurdy re-urged his objection to the property receipt, claiming Stewart was neither the custodian of records nor a "qualified witness" as required by the rule. The court disagreed, finding Stewart was qualified for purposes of the rule, and also clarified that the jail admission form had been excluded on the ground that it was unduly prejudicial.

¶9      Rule 803(6) requires either the custodian of records or "other qualified witness" testify that the record was made 1) contemporaneously, or nearly so, with the underlying event; 2) "by, or from information transmitted by, a person with first hand knowledge acquired in the course of a regularly conducted business activity"; 3) completely in the course of that activity; and 4) as a regular practice for that activity. Portions of the business record that "indicate a lack of trustworthiness" or "lack an appropriate foundation"

5

shall not be admitted. Ariz. R. Evid. 803(6),  Stewart testified he was "a supervisor of the security services section" of the Pima County jail,  had supervised intake of new inmates at the jail for "maybe a year" during the "eight or nine years" he had been a sergeant, and had actually worked as an "ID tech" for two to three years.  He also testified the process for booking inmates was the same, although occurring in a different location, as when he had been supervising intake.  He described the process in some detail, including the fact that inmate information was recorded by a jail employee as it was received from the inmate being booked.  Finally, Stewart testified he was familiar with arrangements for storing inmate property receipts at the jail, although he had not supervised that process, and such receipts were routinely created as part of the normal course of business at the jail.

¶10        Based on this record, we cannot say the trial court abused its discretion in finding Stewart a qualified witness with respect to the jail records.  *See Larsen*, 196 Ariz. 239, ¶ 19, 995 P.2d at 285; *Petzoldt*, 172 Ariz. at 275, 836 P.2d at 985. Accordingly, we conclude the trial court did not abuse its discretion in admitting the receipt and statements that he read from the jail admission form under Rule 803(6).  *See Tucker*,  205 Ariz. 157, ¶ 41, 68 P.3d at 118; *King*, 213 Ariz. 632, ¶ 7, 146 P.3d at 1277.

¶11        McCurdy also argues the inmate statements contained within the jail records are hearsay within hearsay that does not fall within the exception for business records under Rule 803(6).  He relies on *State v. McGann*, 132 Ariz. 296, 298 n.1, 645 P.2d 811, 813 n.1 (1982), in which our supreme court found  customer statements contained in the records of a business unreliable, and thus inadmissible, hearsay.  However, we find a different case

6

more analogous to the situation here. In *State v. Morales*, 170 Ariz. 360, 363-64, 824 P.2d 759-60 (App. 1991), the defendant argued his name, contained in medical records, was inadmissible hearsay because the records were offered to prove that he was the same person involved in an accident and treated for injuries, but there was no indication in those records how the hospital had learned the accident victim's name. This court found "[t]he linking of the trauma code name to the patient's true identity is clearly part of the 'regular practice of [the hospital's] business activity'" and "[i]t is very much in [the hospital's] interest to make certain that linkage is accurate, unlike the [business] in *McGann*." *Id*. at 364, 824 P.2d at 760, *quoting* Ariz. R. Evid. 803(6)(d),    Here, the source of the inmate's identifying information was the inmate himself.[3]  Moreover, like the hospital in *Morales*, it is "very much in [the] interest" of the Pima County jail to ensure the correct person has been booked, or as here, extradited and placed in its custody. *Id*. at 364, 824 P.2d at 760. Stewart was available for cross-examination about the booking procedures at the jail to whatever extent McCurdy desired, and McCurdy produced no evidence to show or suggest the procedures are unreliable and the records therefore tainted so as to be inadmissible. *See id*.

¶12     McCurdy next claims the records are inadmissible because Stewart only identified the "booker" as "Mr. Kent." In *Petzoldt*, 172 Ariz. at 275, 836 P.2d at 985, this court accepted business records with "ample testimony by [the foundation witness] that records were entered contemporaneously by scriveners with first-hand knowledge." We

---

[3]Although the state could not elicit the information before the jury that McCurdy had been in custody since he was booked, the record shows that to be the case.

7

addressed the claim that a scrivener must be identified for the information to be reliable, stating: "'[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person.'" *Id*., *quoting Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2nd Cir. 1987). Stewart testified certain employees of the Pima County jail are known as "bookers," their job consists of obtaining information from inmates as they are brought into the jail, and that the "booker" sits across from the inmate and records the responses as questions are asked. Again, we cannot say the trial court erred in determining Stewart provided sufficient foundation for the admission of the evidence as business records under Rule 803(6). *See Tucker*, 205 Ariz. 157, ¶ 41, 68 P.3d at 118; *King*, 213 Ariz. 632, ¶ 7, 146 P.3d at 1277.

¶13     McCurdy lastly contends the admission of this evidence is fundamental error. "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991); *see also State v. Henderson*, 210 Ariz. 561, ¶ 23 115 P.3d 601, 608 (2005). Because McCurdy has failed to demonstrate how the trial court erred, we will not conduct a fundamental error analysis. *See Lavers*, 168 Ariz. at 385, 814 P.2d at 342.

**Rule 20 Motion and Sufficiency of Evidence**

¶14     McCurdy argues the trial court erred in denying his motion for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., 17 A.R.S., as to the prohibited possessor charge. We review the trial court's ruling on a motion for judgment of acquittal for an abuse

8

of discretion. *State v. Hollenback*, 212 Ariz. 12, ¶ 3, 126 P.3d 159, 161 (App. 2005). A judgment of acquittal is appropriate only when there is no substantial evidence to prove each element of the offense and support the conviction. Ariz. R. Crim. P. 20(a); *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). In determining the sufficiency of the evidence to withstand a Rule 20 motion, we view the evidence in a light most favorable to sustaining the verdict. *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984). If reasonable persons could differ as to whether the evidence establishes a fact in issue, then the evidence is substantial. *State v. Atwood*, 171 Ariz. 576, 597, 832 P.2d 593, 614 (1992).

¶15        McCurdy was convicted of weapons misconduct based on his having possessed a deadly weapon as a prohibited possessor. *See* A.R.S. § 13-3102; *see also* A.R.S. § 13-3101 (A)(6). Thus, the state was required to prove he had previously been convicted of a felony. *See* § 13-3101(A)(6). McCurdy claims there was no evidence connecting him to the 1997 California felony conviction because the state failed to show he was the same person who had been booked into the Pima County jail on April 15. McCurdy argues he was never connected to the California records by more than a common name, because those records lacked "a photograph, physical description, or fingerprints." The state counters it linked McCurdy to the California conviction by his name, date of birth, and signature. Although we agree with McCurdy that the state, inexplicably in our view, did little to establish this critical element of the offense,[4] we will not reverse a conviction for insufficient evidence

_____

[4]Not only did the state fail to affirmatively identify McCurdy as the individual booked into the jail on April 15, it was precluded from introducing the videotape of McCurdy's booking due to its nondisclosure of the tape, and it failed to introduce into evidence a

9

when it is apparent that the evidence before the jury was substantial, despite the state's failure. *See Atwood*, 171 Ariz. at 597, 832 P.2d at 614; *Mathers*, 165 Ariz. at 67, 796 P.2d at 869.

¶16 Stewart testified the "booker" at the Pima County jail "verif[ies] that the person who is sitting in the chair is the person you are supposed to photograph and fingerprint." He also stated, in regard to "the case involving Mr. McCurdy" and "the case that's been going on here today," that April 15 was "his booking date." During Stewart's direct examination, the trial court had sustained McCurdy's objection to any reference to a videotape of McCurdy's booking process; however, Stewart testified during cross-examination, without objection, that he had viewed "the video of his booking process."[5] The jury readily could infer from Stewart's statements that the subject of his testimony, the person on trial, was McCurdy, *see Atwood*, 171 Ariz. at 597, 832 P.2d at 614, and was the same person booked into jail on April 15. Furthermore, McCurdy admits the state "arguably" provided "sufficient proof that the person booked on April 15, 2005 had a prior conviction from Solano County, CA," including signatures on both the California documents and the Pima County jail property receipt. The dissent agrees with this point and so do we. We therefore conclude the

_____

booking photograph of McCurdy the record shows was in the state's possession during the trial.

[5]Thus, contrary to our dissenting colleague's view, there was more than just "a name" for the jury to connect McCurdy to the April 15 booking process and the California conviction.

10

trial court did not abuse its discretion in denying the Rule 20 motion.[6] *See Hollenback*, 212 Ariz. 12, ¶ 3, 126 P.3d at 161.

**¶17** McCurdy also contends his robbery conviction should be vacated because it was tainted by the evidence of his prior conviction, evidence he contends should not have been before the jury. But the trial court redacted portions of the California conviction documents—including the specific nature of the crime—to minimize the risk that information about McCurdy's alleged prior felony conviction would influence the jury's assessment of the robbery evidence. And the court specifically instructed the jury that it must not consider the prior conviction evidence for any purpose other than determining whether McCurdy was a prohibited possessor. We presume jurors follow instructions. *State v. Newell*, 212 Ariz. 389, ¶ 69, 132 P.3d 833, 847 (2006). Moreover, the evidence connecting McCurdy to the robbery was overwhelming. For these reasons, we can conclude beyond a reasonable doubt that any error in the admission of the prior convictions documents would not have changed the outcome of the trial on the robbery count. *See State v. Soders*, 106 Ariz. 79, 82, 471 P.2d 275, 278 (1970) (defendant not entitled to relief on appeal when evidence of guilt is overwhelming and any error would not have affected outcome of trial).

---

[6]Because we find sufficient evidence existed to prove McCurdy's prior conviction beyond a reasonable doubt, we do not address his argument that the trial court failed to find that prior conviction proven by clear and convincing evidence, a lower standard of proof.

**Improper Sentence Enhancement with Prior Conviction**

¶18         McCurdy next argues that the use of his prior conviction for sentence enhancement purposes was invalid because the trial court failed to make required findings under A.R.S. § 13-604(N).[7] That statute provides for enhanced sentencing if the defendant "has been convicted in any court outside the jurisdiction of this state of an offense which if committed within this state would be punishable as a felony." *Id.; see also State v. Thompson*, 186 Ariz. 529, 530, 924 P.2d 1048, 1049 (App. 1996) ("To utilize an out-of-state conviction as a prior felony under section 13-604, the sentencing court must determine that the defendant was convicted of a crime that would have constituted a felony under Arizona law."). The sentencing court must ascertain "'that the fact finder in the prior case actually found beyond a reasonable doubt that the defendant had committed every element that would be required to prove the Arizona offense.'" *State v. Morrison*, 181 Ariz. 279, 281, 889 P.2d 637, 639 (App. 1995), *quoting State v. Clough*, 171 Ariz. 217, 219-20, 829 P.2d 1263, 1265-66 (App. 1992). There must be strict conformity between the elements of the foreign offense and the offense it would constitute had it been committed in Arizona. *Id.*

---

[7]The state concedes fundamental error occurred but contends McCurdy was not prejudiced by that error. However, if the trial judge failed to make the determination required by A.R.S. § 13-604(N), even "an admission does not constitute proof that the foreign conviction would have been a felony under Arizona law." *State v. Heath*, 198 Ariz. 83, ¶ 4, 7 P.3d 92, 93 (2000) (whether foreign offense constitutes felony in Arizona is issue of law for trial court to determine). Thus, McCurdy's sentence was illegally imposed and the state overlooks the substantial prejudice inherent in an improperly enhanced prison term.

**¶19** The trial court relied exclusively on the jury's finding that McCurdy had a prior conviction to support the enhancement and, therefore, never independently addressed whether the California felony would have also been a felony in Arizona. But this court cannot address the issue because the offense date for the California felony appears nowhere in the record and we therefore cannot determine the precise statute under which McCurdy was convicted.[8] *See State v. Kuntz*, 209 Ariz. 276, n.2, 100 P.3d 26, 28 n.2 (App. 2004) ("statute underlying foreign conviction must be compared to Arizona statute in effect at time of offense in deciding whether offense would have been punishable as a felony if committed in Arizona"). We therefore vacate McCurdy's enhanced sentences, *see State v. Heath*, 198 Ariz. 83, ¶¶ 4-5, 7 P.3d 92, 93 (2000), and remand the case to the trial court for further proceedings. *See State v. McGuire*, 113 Ariz. 372, 375, 555 P.2d 330, 333 (1976) (approving retrial of prior conviction allegation); *State v. Rodriguez*, 200 Ariz. 105, ¶ 6, 23 P.3d 100, 101 (App. 2001) (production of additional evidence to establish sentencing factors after remand does not violate constitutional protection against double jeopardy).

**Improper Aggravating Factors**

**¶20** McCurdy further contends the trial court erred in relying on the California prior conviction as an aggravating circumstance, in considering "the offense itself" as a discrete aggravating circumstance, and in finding the existence of multiple victims as an aggravating

---

[8]We note that Section 289 of the California Penal Code was amended once during the 1993 legislative session, 1993 Cal. Stat. ch. 595, 6, and three more times during the 1993-1994 legislative year. *See* 1993-94 Cal. Stat., ch. 39, § 1; 1993-94 Cal. Stat. 1st Ex. Sess., ch. 40, §§ 4, 4.5.

circumstance in the absence of any obvious victims other than the teller. Because the state concedes "the offense itself" was an improper aggravating circumstance, and we must also remand the case for resentencing for that reason, it would be premature to address whether the trial court additionally erred in finding the existence of multiple victims and the California prior convictions as aggravating circumstances—circumstances the court might decline to find on resentencing.[9]

### Inaccurate Presentence Report

¶21 Finally, McCurdy argues the trial court abused its discretion when it refused to make his requested corrections to the presentence report. McCurdy filed an objection to the report pursuant to Rule 26.8(c), Ariz. R. Crim. P., 17 A.R.S., a provision that not only authorizes such objections but also authorizes a trial court to excise improper and objectionable sections in a presentence report. McCurdy specifically objected to the report's reference to his purported previous contacts with law enforcement agencies that had apparently not resulted in convictions, had not been verified, and were therefore, in his view, unreliable.

¶22 At sentencing, the trial court stated it had read the objections to the presentence report and had received a response to the objections from the probation officer who had

---

[9]Before a court may consider a defendant's commission of a prior felony as an aggravating circumstance, that fact must be proved by a preponderance of the evidence. A.R.S. § 13-702(B). Under that standard, evidence that a defendant has the same name as a person referred to in a document may demonstrate the document applies to the defendant unless rebutted by other evidence. *State v. Hadley*, 114 Ariz. 86, 88, 559 P.2d 206, 208 (App. 1977); *State v. Flores*, 27 Ariz. App. 202, 204, 552 P.2d 1217, 1219 (1976).

authored the report. The court promised it would not consider the unverified items in the presence report in imposing sentence. But, notwithstanding defense counsel's assertion that the unverified portions might still be used to McCurdy's detriment by the Department of Corrections, the court declined to excise any portions of the report. Although its reasoning for that ruling is not entirely clear, the court suggested that the itemization of unverified law enforcement contacts was a normal and proper component of a presence report—even if unverified items could not be considered in arriving at the sentence.

¶23 McCurdy argues the court erred in failing to take some ameliorative action once it acknowledged the unverified information of his prior criminal behavior was inappropriate for use in sentencing. McCurdy contends that, because Rule 26.8(c) provides a trial court specific remedies for addressing objectionable material in a presence report, it implicitly requires the court to take some action in response to an objection to such material. McCurdy also suggests that the trial court's remedy—of not considering the unverified information at sentencing—was insufficient because Rule 26.8 is intended to protect a defendant from the use of objectionable material not only at sentencing but also from its use by other agencies and courts thereafter.

¶24 Preliminarily, we agree with McCurdy's contention that our rules of criminal procedure recognize that the contents of presence reports will be furnished to, and used by, other governmental entities for purposes other than determining sentence. As McCurdy points out, Rule 26.6(d)(1), Ariz. R. Crim. P., 17 A.R.S., expressly contemplates that older presence reports will be appended to new ones, and both must be disclosed to "persons

15

having direct responsibility for the custody, rehabilitation, treatment and release of the defendant." *Id.* We also note that Rule 26.10(b)(5), Ariz. R. Crim. P., 17 A.R.S., requires a sentencing court to send a copy of the presentence report to the Department of Corrections. Because we must interpret Rule 26.8 in the context of its surrounding provisions, especially those related to the distribution of presentence reports, we must assume that the supreme court promulgated that rule, in part, to empower trial judges to prevent inaccurate and unreliable information from becoming part of a report with a continuing impact on a defendant beyond the sentence imposed. Thus, when McCurdy sought excision of the unverified entries in the report because those entries might have a continuing impact when sent to the Department of Corrections, he was raising a relevant concern, contemplated by Rule 26.8(c).

¶25 However, the trial court did not rule that it lacked authority under Rule 26.8(c) to excise the unverified portions of the report—nor did it suggest that it erroneously believed the rule's provisions were designed exclusively to remedy the improper use of objectionable material at sentencing. Therefore, we address only whether a trial court abuses its discretion when it declines to excise portions of a report that it has implicitly acknowledged would be improper to consider at sentencing. Put another way, does Rule 26.8(c) require a trial court to utilize one of the remedies set forth therein when it has identified objectionable material in a presentence report?

¶26 The plain language of the rule makes clear that its promulgators intended no such requirement. Although Rule 26.8 sets forth the duties of defense counsel and the

16

prosecutor using imperative language,[10] it imposes no mandatory duty on a trial court to choose any particular remedy for objectionable material.[11] Rather, it provides that "the court may take such action as it deems appropriate under the circumstances" and itemizes a nonexclusive list of potential remedies. *See State v. Warren*, 124 Ariz. 396, 405, 604 P.2d 660, 669 (App. 1979) (finding no reversible error in presentence report that contained "numerous references to crimes that the defendant was either never charged with or to charges in which he ha[d] been acquitted").

¶27 Here, the trial court chose the remedy of merely declining to consider the objectionable material at sentencing. Nothing in Rule 26.8(c) suggests that it was required

---

[10]Rule 26.8(a) states that each party "shall" notify the court of any objection to the presentence report. Rule 26.8(b) states that the prosecutor "shall" disclose any information that would "tend to reduce the punishment to be imposed."

[11]Rule 26.8(c) provides:

> In the event that the court sustains any objections to the contents of a presentence report, the court may take such action as it deems appropriate under the circumstances, including, but not limited to:
>
> 1. Excision of objectionable language or sections of the report.
>
> 2. Ordering a new presentence report with specific instructions and directions.
>
> 3. Directing a new presentence report to be prepared by a different deputy probation officer.
>
> 4. Ordering the original (objectionable) presentence report sealed.

17

to do anything more. And, although McCurdy argues persuasively that the rule contemplates that its remedies are available in part to prevent further distribution of inaccurate information to entities such as the Department of Corrections, he has not contended that it would be improper or unlawful for that Department to be aware of, and consider, objectionable material—such as prior arrests not resulting in verified convictions—when administering an inmate's incarceration. Thus, McCurdy has not shown that the trial court erred to the extent it implicitly concluded that the entries in question might be improper to consider at sentencing but not necessarily for all future use by other state entities. We therefore find no abuse of discretion.

## Disposition

¶28 Accordingly, we affirm McCurdy's convictions but remand the case to the trial court for resentencing.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Judge

E C K E R S T R O M, Presiding Judge, dissenting in part and concurring in part.

¶29 In my view, the state presented insufficient evidence that the defendant/appellant Thomas McCurdy is the same Thomas McCurdy who was booked into the Pima County jail and who was convicted of a felony in California in 1997. Because,

18

under the circumstances of this case, the appellant could not be convicted of prohibited possession of a firearm absent sufficient evidence so demonstrating, I would reverse his conviction on that count.

¶30     Preliminarily, the state adequately demonstrated that the Thomas McCurdy who was booked into the Pima County jail on April 15, 2005, was convicted of a felony in California. The names and birth dates on the relevant documents are identical, and the jury reasonably could have concluded that the signatures matched. But, the state apparently overlooked that it needed to present some evidence that the McCurdy booked into the Pima County jail on April 15, 2005, was the defendant.

¶31     As the majority observes, Sergeant Stewart testified that he had seen a videotape of the referenced inmate's admission to the Pima County jail. He also testified that he had obtained the inmate's identification documents from the inmate's housing—a location where Stewart could have secured a visual identification of the inmate. But the state utterly failed to elicit any testimony that the inmate Stewart saw in the videotape was the defendant. Nor did the state elicit from Stewart any testimony identifying the inmate in his cell. And, neither the videotape nor a booking photograph discussed by counsel at the bench was admitted into evidence.

¶32     Thus, although the record suggests the state may have had ample evidence at its disposal to prove that the defendant McCurdy was the same McCurdy booked into the Pima County jail—and therefore the same person convicted of a felony in California—it simply failed to present that evidence to the jury. Therefore, the only connection between

19

the defendant McCurdy and the California conviction presented to the jury was a name. Arizona courts have long held that the mere commonality of a name is insufficient to prove a prior conviction beyond a reasonable doubt. *State v. Pennye*, 102 Ariz. 207, 208, 427 P.2d 525, 526 (1967); *State v. Terrell*, 156 Ariz. 499, 503, 753 P.2d 189, 193 (App. 1988) (matching unusual names, similar physical descriptions, and reference in Texas conviction document that person convicted of felony resided in same Arizona county where defendant was arrested insufficient to establish prior conviction).

¶33 To support the contrary conclusion, I believe the majority draws inferences that are not supported by the record. The majority correctly notes that Stewart testified during cross-examination that he had viewed the video of the booking process. It then posits that the jury could assume that the person Stewart had viewed was the defendant because the defendant was the presumed subject of Stewart's testimony. However, Stewart testified as a foundational witness for the inmate records, not as an identification witness—a fact readily demonstrated by the state's failure to ask Stewart to identify the defendant in the courtroom, or compare the defendant to any photographs in the inmate documents. When viewed in proper context, the specific subject of Stewart's testimony was the inmate McCurdy, whose records Stewart had gathered and reviewed. At the very least we cannot assume Stewart intended to identify the defendant in the courtroom in the absence of any testimony to that effect.

¶34 The majority correctly emphasizes that defense counsel previously had elicited from Stewart that he did not know anything about the defendant McCurdy's case, "the case

that's been going on here today." The majority then presumably infers that all Stewart's comments thereafter must relate to the defendant McCurdy. But counsel immediately redirected Stewart's testimony to the inmate documents in front of Stewart. Counsel then asked a series of questions designed to show that Stewart did not have any first-hand knowledge about the inmate McCurdy because Stewart had not booked that inmate himself.

¶35     The insufficiency of the evidence connecting the defendant to the inmate McCurdy appears to have arisen from an understandable prosecutorial oversight in the context of vigorous foundational objections by the defense. But I cannot view the state's duty to properly present its evidence as a mere technical requirement when its failure to do so deprives the defendant of his opportunity to subject such evidence to adversarial testing—adversarial testing that is a cornerstone of our constitutional scheme of criminal justice. *See* U.S. Const. amend. VI. Ultimately, we do not know what Stewart would have said if asked to compare the appearance of defendant McCurdy to inmate McCurdy, or whether any such comparison would have withstood cross-examination.

¶36     For the above reasons, I reluctantly and respectfully dissent. I agree with, and join, the majority's well-reasoned opinion in all other respects.

_____
PETER J. ECKERSTROM, Presiding Judge

21