NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EDDIE GUILLERMO COCHRAN, *Appellant.*

Nos. 1 CA-CR 23-0448
1 CA-CR 23-0561
(Consolidated)

FILED 10-22-2024

Appeal from the Superior Court in Yuma County
No. S1400CR202101190
The Honorable Claudia Maria Gonzalez Jimenez, Judge *Pro Tempore*

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND
REVERSED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

---

**P A T O N,** Judge:

¶1 Eddie Guillermo Cochran appeals his conviction and sentence for child molestation. For the following reasons, we affirm Cochran's conviction and affirm in part and reverse in part his sentence.

### FACTS AND PROCEDURAL HISTORY

¶2 In 2021, eight-year-old Owen[1] lived with his mother, Katie, stepfather, Paul, and younger brother, Liam. Paul and Katie split up over the summer, and Katie's new boyfriend, Cochran, moved in with Katie, Owen, and Liam.

¶3 While sleeping one night, Owen was awakened by Cochran, who laid down in Owen's bed. Cochran "grabb[ed]" and "tickl[ed]" Owen's penis.

¶4 About three weeks later, Owen told Paul that he had woken up to Cochran "in his bed with [his] arm around [Owen's] waist and under [Owen's] underpants." Paul told Katie and then contacted law enforcement.

¶5 Katie and Owen met with law enforcement. Detective Ronald Jesser interviewed them and recorded phone calls between Owen and Cochran and Katie and Cochran. During Katie's call with Cochran, she asked him if it was possible he was so intoxicated that he did not remember touching Owen, to which Cochran responded he "would never ever do something like that" and that Owen was lying.

¶6 Detective Jesser interviewed Cochran. Cochran initially denied any wrongdoing and said Owen was lying. But Cochran later said that he "was fucked up," and that after getting into bed with someone, he

---

[1] We use pseudonyms to protect victim and witness identities.

remembered "putting [his] hand down there and realizing [it was] not her," meaning Katie, but he had no sexual intent.

¶7 After a six-day trial, the jury found Cochran guilty of child molestation. The superior court sentenced Cochran to a 12-year flat time sentence, based on the parties' stipulation. The court also ordered that it would retain jurisdiction to determine restitution at a hearing to take place within 180 days.

¶8 Cochran timely appealed. About 63 days after Cochran filed his appeal, the superior court sua sponte amended its prior judgment and sentencing order to include fines, fees, and assessments, noting that it "sentenced the defendant without assessing statutory fines, fees, and assessments." The order required Cochran to pay $750.00 in attorneys' fees, $2.00 to the victims' rights enforcement assessment, $9.00 to the victims' rights fund, $40.00 for a superior court enhancement fee, $250.00 for the sex offender registration fee, and $500.00 for "DCAC/Sexual Assault Assessment."

¶9 Cochran timely appealed the amended judgment and sentencing order. We granted Cochran's request to consolidate the two appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033.

## DISCUSSION

¶10 Cochran contends the court erred by permitting the State's expert witness, Dr. Wendy Dutton, to testify and admitting the entire video of his interview with law enforcement into evidence. He also argues the court's amended judgment and sentencing order is void.

### I. The superior court did not err by allowing Dr. Dutton to testify at trial.

¶11 Cochran argues that: (1) Dutton should have been excluded as a witness because her testimony would not aid the jury; (2) her testimony constituted improper vouching; and (3) the superior court improperly shifted the burden of proving the admissibility of Dutton's testimony to him.

### A. The court did not err in determining Dutton's testimony would aid the jury.

¶12 Prior to trial, Cochran filed motions in limine to preclude Dutton from testifying, and to prevent the State from using Dutton's testimony to profile Cochran and vouch for other evidence. Cochran argued that "anything and everything Wendy Dutton may testify [to] is already within the experiences of the average jury panel," and that her testimony on child sexual abuse victim behavior was unnecessary because the jury had sufficient knowledge on the subject.

¶13 At the Rule 702 hearing, the State responded that Dutton's testimony was relevant to show why victims delay telling someone about being abused—which was particularly relevant given Owen's delayed disclosure—suggestibility, and memory issues that "the defense has put into play" including statements made during voir dire, opening statement, and the defense's cross-examination of Owen. The court ruled that Dutton's "cold" expert testimony was relevant and she could testify.

¶14 During Owen's trial testimony, he said he did not tell his mom about Cochran molesting him because he was afraid of getting into trouble. And he only told Paul about Cochran molesting him after Paul asked if anything happened. During Detective Jesser's testimony, the detective described what a "forensic interview" is and how it is used to avoid interjecting any facts or beliefs into the child's memory.

¶15 During Dutton's testimony, she explained that the term "forensic" in "forensic interview" means using scientific principles and applying them in a legal setting. Dutton described that forensic interviewing takes knowledge from the fields of child development, language acquisition, and memory and suggestibility for use in a legal setting.

¶16 We review the superior court's admission of expert testimony for an abuse of discretion. *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 13 (2014). The superior court abuses its discretion "if it misapplies the law or exercises its discretion based on incorrect legal principles." *State v. Reed*, 252 Ariz. 328, 331, ¶ 13 (2022) (citation omitted).

¶17 As the superior court noted, Arizona courts have long approved the admission of child sexual abuse victim behavior evidence and have recognized Dutton as a qualified expert. *See Salazar-Mercado*, 234 Ariz. at 594-95, ¶ 18. The court noted that to preclude Dutton's testimony, Cochran would have to provide "studies, testimony, etc." in order to show her testimony would not aid the jury, which Cochran did not do. Cochran does not challenge Dutton's qualifications on appeal, nor did he below.

During trial, Cochran noted that Dutton has "been qualified as a witness many, many times."

¶18 Under Rule 702(a), an expert may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a). Rule 702 permits "cold" experts, like Dutton, to give general, educative testimony to help the jury understand evidence or resolve fact issues. Ariz. R. Evid. 702 cmt. 2024. Cold expert testimony that explains a victim's inconsistent behavior is admissible to help jurors evaluate a victim's credibility. *State v. Haskie*, 242 Ariz. 582, 586, ¶ 16 (2017).

¶19 As previously mentioned, Cochran did not offer any studies, testimony, or other evidence to prove Dutton's testimony did not aid the jury, apart from generally contending that the subjects at issue were within the average juror's common knowledge. Without such information, we will not reconsider whether her testimony is admissible under Rule 702(a). *Salazar-Mercado*, 234 Ariz. at 594-95, ¶¶ 17, 19; *see State v. Ortiz*, 238 Ariz. 329, 334, ¶ 11 (App. 2015).

¶20 Cochran argues that expert testimony is only permissible to explain "curious or puzzling victim behavior," and because Owen's behavior was not "puzzling," the jury did not need "expert enlightenment" on the facts here, citing *State v. Moran*, 151 Ariz. 378 (1986). But Cochran's reliance on *Moran* is misplaced because in that case, the court considered the danger of prejudice arising from an expert witness who gave an opinion about a victim's credibility. *Id.* at 382, 385. The court found that victim credibility testimony was inadmissible and did not aid the jury because it went far beyond describing general victim behavioral characteristics. *Id.* at 385-86. Conversely here, Dutton testified she did not know any case-specific details; she provided only blind testimony and general information about child sexual abuse victim behavior.

¶21 Cochran further claims "the record at trial is devoid of any challenge to [Owen's] testimony," specifically that Cochran "never suggested that the passage of two weeks made it [an] unusually long period of time for [Owen] to report the abuse if it was true." This contention, however, is incorrect. During Cochran's opening statement, cross-examination of Owen, and closing argument, he challenged Owen's delayed disclosure, implied Owen was susceptible to suggestibility, and questioned Owen's credibility. In cases where the facts present issues of credibility that are not commonly understood by jurors, such as the reactions of child victims of sexual abuse, expert testimony explaining the

victims' general behavioral characteristics should be admitted. *State v. Lujan*, 192 Ariz. 448, 452, ¶ 12 (1998). The court did not abuse its discretion in determining Dutton's testimony was admissible to help jurors understand Owen's behavior—particularly after Cochran put Owen's credibility and behavior at issue.

### B. The court and State did not improperly shift the burden of proving Dutton's testimony was admissible to Cochran.

¶22 Cochran contends that the superior court and State improperly shifted the burden of proving Dutton's testimony was admissible to him. The proponent of expert testimony bears the burden of proving its admissibility under Rule 702. *Salazar-Mercado*, 234 Ariz. at 593-94, ¶ 13. Cochran claims that the superior court and State "asserted that it was [Cochran's] burden to show why the assistance to the trier of fact is not required in the case." The record does not reflect the court or State made these assertions. In fact, the superior court stated that "the burden is still on the State to . . . meet Rule 702." The court also said the jury would be instructed on its ability to accept or reject Dutton's testimony, and the jury was in fact instructed that "[e]xpert opinion testimony should be judged just as any other testimony," jurors were free to "accept it or reject it," and should consider it in light of "all the other evidence in the case." We presume jurors follow the court's instructions. *State v. McCurdy*, 216 Ariz. 567, 574, ¶ 17 (2007).

¶23 Cochran alternatively argues that the State did not bear its burden of establishing that Dutton's testimony was admissible because the State did not prove its relevance. This argument largely rehashes his argument addressed in Section I.A., *supra*. As discussed, the superior court did not err in finding that Dutton's testimony was relevant based on Owen's testimony. The State therefore met its burden under Rule 702 and did not impermissibly shift that burden to Cochran.

### C. Dutton's testimony did not bolster Detective Jesser's credibility and therefore amount to vouching.

¶24 Cochran also argues that the State "improperly vouched" for Owen's and Detective Jesser's credibility by permitting Dutton's testimony. As previously mentioned, Cochran filed a motion to preclude Dutton's testimony before trial, claiming that prosecutorial vouching would occur if the State used Dutton's testimony to bolster Detective Jesser's testimony. Cochran now argues that the State used Dutton's testimony "to suggest a level of credibility to the police investigation that it did not deserve."

¶25        Prosecutorial vouching occurs when the prosecutor either "places the prestige of the government behind its witness," or "suggests that information not presented to the jury supports the witness's testimony." *State v. Johnson*, 247 Ariz. 166, 204, ¶ 157 (2019). The first type of vouching gives personal assurances as to a witness's veracity, and the second type involves prosecutorial remarks that "bolster a witness's credibility by reference to matters outside the record." *State v. Acuna Valenzuela*, 245 Ariz. 197, 217, ¶ 75 (2018) (citation omitted). Cochran has not provided record evidence supporting his contention that Dutton's testimony amounted to vouching.

¶26        At trial, Dutton explained the term "forensic" by comparing forensic science with forensic interviewing. Cochran argues this comparison improperly equated the detective's forensic interview with forensic science, giving the forensic interview "more weight than it otherwise deserved." We disagree. Dutton's definition of "forensic" did not place the prestige of the government behind its witness, nor did it reference information outside the record. Rather, Dutton explained forensic interviewing by giving a common example of the term "forensic" —*i.e.*, forensic science. Dutton's statement did not equate "forensic interviewing" with "forensic science," nor did she provide an opinion as to Owen's credibility. Expert witnesses may offer general, educative testimony to help juries understand evidence or resolve issues of fact. *Salazar-Mercado*, 234 Ariz. at 593, ¶ 10. Here, Dutton offered a general, educative example to explain forensic interviewing. Accordingly, Dutton's testimony did not amount to improper vouching.

## II. Cochran has not shown the admission of his interview video into evidence amounted to fundamental, prejudicial error.

¶27        Cochran argues that it was error for the jury to see the entire video of his interview and resulted in harmless or fundamental error; he does not clarify which standard he believes applies. He alleges the State used the video to introduce inadmissible testimony that it could not properly elicit through trial testimony and the superior court erred by not reviewing the entire video before admitting it. Cochran also mentions the court erred by conducting an "incomplete balancing test for admission of the confrontation call" in his opening brief, but because he does not discuss the call again or otherwise develop the argument, he has abandoned and waived the issue on appeal. Ariz. R. Crim. P. 31.10(a)(7)(A) (opening briefs must include "appellant's contentions with supporting reasons for each contention" and "citations of legal authorities."); *see State v. Vargas*, 249 Ariz. 186, 191, ¶ 22 (2020); *State v. Perez*, 233 Ariz. 38, 41, ¶ 10 (App. 2013).

**¶28** At trial, the State played clips from the interview video, which Cochran did not object to. In one of those unobjected-to clips, Cochran admitted to Detective Jesser that he remembered putting his hand down someone's pants thinking it was Katie, and then realized it was not. During cross-examination, Cochran questioned Detective Jesser about unsubmitted portions of the video, including that Cochran never admitted "any sexual intent," to which Jesser responded: "I would agree with you, yes."

**¶29** On redirect, the State moved to admit the entire video because Cochran called into question portions of the video not shown in the clips, thereby suggesting "there are or are not certain admissions." The State told the court it initially opted to admit only portions of the video for "efficiency" purposes, but given cross-examination, argued the best evidence would be to allow the jury to see the entire interview. Cochran objected to the admission of the entire video, claiming portions of it were inadmissible on relevance grounds; he later argued it was cumulative evidence.[2]

**¶30** The superior court admitted the entire video into evidence and the State played it for the jury. The State then asked Detective Jesser to clarify whether he asked Cochran if he had intent, to which the detective responded he did in order to develop what Cochran remembered that night. The State asked Detective Jesser whether it was his role to provide his opinion on the evidence, to which the detective responded no, that is the jury's role. During closing argument, defense counsel stated he was happy the State played the entire interview video because the jury "had a chance to hear from [Cochran] there."

**¶31** On appeal, Cochran raises two new objections to the admission of the entire video that he did not raise before the superior court—first, that the State used the video to introduce inadmissible testimony and second, the superior court erred by not reviewing the entire video before admitting it in violation of Arizona Rule of Evidence 403.

**¶32** Cochran did not object to admission on these grounds, so he must show fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). To prevail under fundamental error review, a defendant must show: (1) the superior court erred, and (2) the error was fundamental—meaning

---

[2] Cochran reasserts his cumulative error argument on appeal but concedes that Arizona does not recognize cumulative error outside of prosecutorial error. *See State v. Hughes*, 193 Ariz. 72, 78-79, ¶¶ 24-25 (1998).

it went to the foundation of his case, took away a right essential to his defense, or was "so egregious that he could not possibly have received a fair trial." *Id.* at 142, ¶ 21. The defendant must also show prejudice, unless he shows the error was so egregious he could not have possibly received a fair trial. *Id.* If that is the case, prejudice is presumed. *Id.* We find no error, let alone fundamental, prejudicial error.

¶33        Admitting a taped interview in which a detective uses interrogation techniques to elicit responses does not automatically amount to error. *See State v. Allen*, 253 Ariz. 306, 329-30, ¶¶ 35-38 (2022) (detective's "accusations during the interrogation were not offered as his opinion, but rather were permissibly admitted as an interrogation technique and an integral part of the videotaped interrogation."). Cochran claims that the videotaped interview was improperly presented as Detective Jesser's opinion. Cochran concedes, however, that our courts find no fundamental error in admitting statements of a detective's opinion on a defendant's truthfulness during interviews. *State v. Boggs*, 218 Ariz. 325, 335, ¶¶ 39-42 (2008). Detective Jesser testified that his role at trial was not to provide his opinion on the evidence, and the jurors were instructed to not give undue weight to law enforcement testimony. Detective Jesser's opinions about Cochran's truthfulness were part of an interrogation technique and were not offered as trial testimony and thus there was no error. *See Boggs*, 218 Ariz. at 335, ¶ 40.

¶34        Cochran next argues that the State used the interview video to introduce inadmissible evidence to the jury. Cochran includes multiple claims within this argument, claiming the video (1) implied prior bad act evidence, (2) presented improper "were they lying" questions, (3) evoked sympathy, (4) suggested additional unsubmitted facts, and (5) presented improper profile evidence. The State responds that Cochran fails to establish how any of these alleged errors in admitting the entire video resulted in prejudice.

¶35        First, Cochran argues the prosecution used the video to imply that Cochran could have committed other bad acts in violation of Arizona Rule of Evidence 404. Evidence of other crimes, wrongs, or acts is not admissible to prove a person acted according to those prior acts. Ariz. R. Evid. 404(b)(1). But Cochran does not identify what evidence the State submitted in violation of Rule 404; he only claims the State implied that potential prior bad acts could exist.

¶36        Cochran next contends that the State introduced the video to admit an otherwise-improper trial question. During the interview,

Detective Jesser asked Cochran if he thought Owen was lying. As Cochran concedes, however, questioning whether a witness is lying is admissible and does not result in fundamental error. *State v. Morales*, 198 Ariz. 372, 375-76, ¶¶ 13-15 (App. 2000).

¶37         Cochran also claims that by presenting the whole video, the State admitted portions that improperly prejudiced Cochran by evoking sympathy for Owen. He claims that certain portions of the video were admitted to inflame the jury's sympathies. Unfair prejudice can result from evidence that has an undue tendency to "suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). Not all harmful evidence is unfairly prejudicial, however. *Id.* at 545-46. Cochran did not present anything to suggest this evidence was unfairly prejudicial, apart from generally claiming it could have suggested the jury rendered its decision on an improper basis. *See State v. Gonzales*, 181 Ariz. 502, 510-11 (1995).

¶38         Cochran further argues that by referencing the police investigation during the video interview, Detective Jesser implied he had additional evidence not given to the jury to indicate Cochran's guilt. Nothing in the record supports Cochran's allegation that Detective Jesser relied upon unsubmitted evidence during his questioning. Further, Cochran cites no case law or authority to support his claim.

¶39         Finally, Cochran claims that the State used the interview video to present inadmissible profile evidence. Cochran claims that during the interview, Detective Jesser suggested that Owen fit the profile of a credible accuser. Cochran argues that Detective Jesser's statements about Owen's credibility were presented at trial as his professional opinion. These statements were not made for the purpose of giving opinion testimony at trial; they were part of an interrogation technique and were not improper. *See Boggs*, 218 Ariz. at 335, ¶ 40 (finding no fundamental error from a police officer's accusations of untruthfulness not made for the purpose of giving opinion testimony at trial).

¶40         Further, the jurors were instructed that "the testimony of a law enforcement officer is not entitled to any greater or lesser importance" because the witness is a law enforcement officer and they should consider law enforcement testimony "just as [they] would the testimony of any other witness." We presume jurors follow the court's instructions. *McCurdy*, 216 Ariz. at 574, ¶ 17.

¶41        Even assuming error, each of Cochran's allegations relies upon speculation to carry his burden of establishing fundamental error. Mere speculation is insufficient to prove prejudice. *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013). And during defense counsel's closing argument, he told the jurors he was glad they got to see the full video in order to hear from his client. Cochran has not met his burden of proving the admission of the full video was fundamental, prejudicial error.

¶42        Cochran additionally argues the superior court could not "make an adequately informed decision on [the recorded interview's] admissibility" because the superior court did not review the entire interview video. Because Cochran did not make this objection below, we review for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Cochran does not, however, present any citations to the record or any other evidence proving the superior court did not review the entire video or authority as to why not viewing the video before admitting it is error. Cochran appears to argue that the admission of the video violated Rule 403 because the court could not conduct a balancing test without watching the video but does not further develop this argument. Even so, Rule 403 allows the superior court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403.

¶43        Cochran claims that playing the video prejudiced him because "traditional testimonial questions and answers . . . [are] the most appropriate way to present interrogation evidence." The State responds that the superior court inherently conducted a Rule 403 balancing test when it admitted the video into evidence over Cochran's objection.

¶44        Cochran fails to demonstrate the court erred by not watching the entire video. Admitting video evidence is within the superior court's discretion and will be upheld absent an abuse of that discretion. *State v. Paul*, 146 Ariz. 86, 88 (App. 1985); *see also State v. Smith*, 250 Ariz. 69, 89, ¶ 81 (2020) (holding that the trial court did not abuse its discretion by admitting a video without watching it).

¶45        Before playing the entire video, the superior court considered the entire video's relevance and overruled Cochran's objection to its admission. And Cochran does not explain why showing the entire video to the jury was prejudicial. Even without the full video, Detective Jesser conceded Cochran never admitted having sexual intent—an element of child molestation. We must presume that the superior court weighed the

probative value of showing the entire video against any potential prejudicial effect. *See Beasley v. State*, 1 CA-CV 07-0287, 2008 WL 4149642, at *3, ¶ 11 (Ariz. App. Mar. 27, 2008) (mem. decision) (finding that the court "must presume that the superior court knew and properly conducted a Rule 403 analysis" when nothing in the transcripts indicates the superior court failed to conduct a Rule 403 weighing). Accordingly, the superior court did not abuse its discretion in admitting the video of Cochran's interview. *See Gonzales*, 181 Ariz. at 511 (finding argument that evidence "should have been excluded under Rule 403" to be meritless, because defendant failed to prove the evidence was unfairly prejudicial).

### III. The superior court erred by entering an amended judgment and sentencing order.

**¶46** Cochran also argues the superior court lacked jurisdiction to issue an amended judgment imposing fines, fees, and assessments ("amended order"), because such fees were not included in his original sentence. The amended order required Cochran to pay $750.00 in attorneys' fees, $2.00 to the victims' rights enforcement assessment, $9.00 to the victims' rights fund, $40.00 for a superior court enhancement fee, $250.00 for the sex offender registration fee, and $500.00 for "DCAC/Sexual Assault Assessment." The State responds that it agrees the superior court erred in imposing fines and fees, but contends it was correct in its attorneys' fees award. Jurisdictional issues constituting pure questions of law are reviewed de novo. *State v. Zaputil*, 220 Ariz. 425, 427, ¶ 7 (App. 2008).

### A. The superior court lacked jurisdiction to amend Cochran's judgment and sentence.

**¶47** Cochran argues that the superior court erred in sua sponte amending his judgment and sentence to add additional fines, fees, and assessments because he had no notice and opportunity to be heard, the court lacked jurisdiction to correct its sentence under Arizona Rule of Criminal Procedure 24.3, and the amended order did not correct a clerical error, omission, or oversight under Arizona Rule of Criminal Procedure 24.4. We review issues involving the interpretation of the Arizona Rules of Criminal Procedure de novo. *State v. Macias*, 249 Ariz. 335, 339, ¶ 8 (App. 2020).

**¶48** A superior court lacks inherent power to modify a sentence already lawfully imposed. *State v. Filipov*, 118 Ariz. 319, 326 (App. 1977). But the superior court can modify an unlawful sentence or one unlawfully imposed within 60 days after the entry of judgment, or within 15 days if a

notice of appeal was filed under Rule 31.  Ariz. R. Crim. P. 24.3(a); *State v. Bryant*, 219 Ariz. 514, 516, ¶ 8 (App. 2008); *State v. Serrano*, 234 Ariz. 491, 494, ¶ 9 (App. 2014); *State v. Guthrie*, 110 Ariz. 257, 258 (1974).

**¶49**    Here, the superior court issued the amended order on December 7, 2023, outside the 60-day period after entry of judgment and the 15-day period after a notice of appeal is filed per Rule 24.3.  Thus, even assuming the superior court was correcting an "unlawful sentence or one imposed in an unlawful manner," the superior court lacked jurisdiction to take any action under Rule 24.3.[3]

**¶50**    Cochran also argues the amended order was improper because it did not correct a clerical error.  We agree.  Rule 24.4 allows the superior court "on its own or on a party's motion" to "correct clerical errors, omissions, and oversights in the record."  Ariz. R. Crim. P. 24.4.  It "must notify the parties of any correction."  *Id.*  But the superior court cannot use a nunc pro tunc order to add "an order or judgment that was never previously made or rendered" to the record.  *State v. Johnson*, 113 Ariz. 506, 509 (1976).

**¶51**    Here, the superior court did not enter its amended order to correct any clerical errors, omissions, or oversights from the sentencing hearing.  Instead, the superior court merely noted it "sentenced the defendant without assessing statutory fines, fees, and assessments" and amended its original order to include fines, fees, and assessments.  Nothing at the sentencing hearing suggests the court intended to issue fines, fees, and assessments as part of Cochran's sentence.  The court's amended order appears to remedy a judicial error, which is distinguishable from a clerical error, and outside the rule.  *Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, 260-61, ¶ 20 (2022).  The superior court thus erred.

## B. The superior court did not err in ordering Cochran to pay attorneys' fees in its amended order.

**¶52**    The superior court ordered Cochran to pay $750.00 in attorneys' fees under Section 11-584 in its amended judgment and sentence.  Cochran argues this deprived him of constitutional right to notice.  The State responds that although the attorneys' fees do not constitute

---

[3] Although the court retained jurisdiction to determine future restitution, none of the above-listed fines, fees, and assessments are restitution, a point the State concedes.  Restitution is not a penalty or punishment.  *Zaputil*, 220 Ariz. at 428, ¶ 11.

restitution, the superior court had jurisdiction to impose attorneys' fees in its amended order because unlike the other fees imposed, attorneys' fees do not "frustrate the appeal." *See State v. O'Connor*, 171 Ariz. 19, 22 (App. 1992) (although a court ordinarily loses jurisdiction once an appeal is filed, one exception is for acts that "cannot negate the decision in a pending appeal or frustrate the appeal process.").

¶53        Here, prior to trial, the justice court assessed Cochran's financial status when it appointed him counsel, and as part of that assessment, ordered him to reimburse the county $750.00 in attorneys' fees. Cochran therefore had notice that he would be ordered to pay this amount at some point during the proceeding and nothing in the record indicates he challenged the amount as unreasonable. *See* A.R.S. § 11-584(C)(2) (the court may require an indigent defendant represented by the public defender to pay the county a "reasonable amount" towards the cost of representation). We see no error in the court's imposition of $750.00 in attorneys' fees.

## CONCLUSION

¶54        We affirm Cochran's conviction and sentence but reverse the portion of the superior court's amended sentencing order adding additional fines, fees, and assessments. We affirm the portion of the court's order requiring Cochran to pay $750.00 in attorneys' fees.

