NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

LAWRENCE EMILE BOUCHER, *Appellant.*

No. 1 CA-CR 15-0763
FILED 12-13-2016

---

Appeal from the Superior Court in Mohave County
No. S8015CR201301012
The Honorable Steven F. Conn, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R,** Judge:

¶1        Appellant Lawrence Emile Boucher appeals his convictions and sentences for ten felonies. He argues the superior court violated his Sixth Amendment right to counsel by denying his request for alternate counsel without conducting a hearing. He also argues the court erred by refusing to include in the final jury instructions that the jury should not infer guilt from his absence at trial. For the following reasons, we affirm Boucher's convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Boucher and an eleven-year-old girl shared a bed, where Boucher forced her to perform sexual acts and to touch his genitals. After being contacted by the police, Boucher later admitted receiving oral sex from the girl and touching her upper thighs.

¶3        Boucher was indicted for eleven felonies. Shortly after the indictment, Boucher requested and received new counsel based on a conflict of interest of his original appointed counsel. Over the next two years, Boucher requested at least twenty continuances. Two weeks before trial, Boucher attended the final management conference telephonically. During the conference, Boucher's attorney requested a continuance so that Boucher could find new counsel. The superior court denied the continuance, noting that "[Boucher is] already on his second attorney. . . . [I]f [he] was going to hire an attorney, he should have done . . . that before now." At no time during the conference did Boucher articulate any reason for requesting new counsel.

¶4        Boucher failed to appear at trial. After addressing preliminary matters, the superior court recessed to give Boucher a chance to appear. Boucher did not appear. During voir dire the court addressed Boucher's absence:

> I am concerned that there might be some of you that would feel that the defendant's absence from the courtroom is some

sort of evidence that you could consider against him. It is not. His absence is just the same for procedural and legal purposes as if he were here and invoked his right to not testify, which he would have the right to do.

The court excused four jurors who indicated that Boucher's absence would influence their decision.

¶5        During the second day of trial, the superior court discovered a fax Boucher had sent directly to the court dated August 31, 2015:

> Dear Sir Today at the Hearing I did not hear what my attorney Thomas Jones said about me wanting another attorney. I would like you to consider the reason I want the court to give me another attorney, the reason is. Is [sic] that Mr. Jones does not believe in me nor this case, He has me convicted already and we haven't even gone to trial. And the reason I haven't spoken up sooner was because he had me doing stuff to help my case. Going to a p[sycho]logist which I thought would help my case but it didn't. . . . I would like to have [an] attorney that at least believes in me.

The court acknowledged that the fax was sent before the trial. However, the court denied the request noting that Boucher had failed to appear at trial to object to his current counsel's representation.

¶6        In settling final jury instructions, Boucher's attorney requested that the superior court reiterate that Boucher's presence could not be held against him in considering guilt. Because the issue had already been dealt with in voir dire, the court denied the request. Although the superior court did not address Boucher's absence directly, it instructed that

> the defendant is not required to testify. The decision on whether to testify is left to the defendant. You must not conclude that the defendant is likely to be guilty because he does not testify. You must not discuss this fact, or let it [a]ffect your deliberations in any way.

¶7        During closing arguments, Boucher's attorney addressed Boucher's absence:

> The final thing I would say, of course, is, as maybe the 800-pound gorilla in the room, I have no idea why Mr. Boucher is not here; but that has no bearing. Whether or not Mr. Boucher

3

was seated next to me the last two days or wasn't, has no bearing on what occurred back in August 9th and 10th of 2013; so please don't factor that in one way or the other.

**¶8**     The jury convicted Boucher of ten felonies and the court sentenced him to two consecutive life sentences with an additional twenty-five years' imprisonment. Boucher timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2016), and 13-4033(A)(1) (2008).[1]

## DISCUSSION

**¶9**     Boucher argues the superior court (1) violated his Sixth Amendment right to counsel by denying his request for alternate counsel without conducting a hearing; and (2) erred by refusing to instruct the jury regarding his absence from the trial. Boucher asks that we either remand the matter for an evidentiary hearing or vacate his convictions and remand for a new trial.

I.     Sixth Amendment Right to Counsel

**¶10**     Boucher argues the superior court violated his Sixth Amendment right to counsel by denying his request for alternate counsel without conducting a hearing pursuant to *State v. Torres*, 208 Ariz. 340 (2004). Under *Torres*, "[t]he nature of the inquiry [into a request for alternate counsel] depend[s] upon the nature of the defendant's request." *Id.* at 343, ¶ 8. Only sufficiently specific, factually based allegations warrant a hearing. *Id.* Because Boucher's complaint was not sufficiently specific, the court did not violate his Sixth Amendment right to counsel.

**¶11**     The Sixth Amendment guarantees criminal defendants assistance of counsel. U.S. Const. amend. VI. It is well established that this guarantees *competent* counsel. *See, e.g.*, *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to effective assistance of counsel."). However, the defendant is not "entitled to counsel of choice, or to a meaningful relationship with his or her attorney." *State v. Moody*, 192 Ariz. 505, 507, ¶ 11 (1998) (citation omitted). To obtain new counsel, the defendant must show a complete breakdown in communication or an irreconcilable conflict between the defendant and appointed counsel. *Torres*, 208 Ariz. at 342, ¶ 6. While the Sixth Amendment requires a court to inquire as to the basis of a defendant's

[1]     We cite to the current version of statutes unless changes material to this decision have occurred.

request for new counsel, the nature of the inquiry is determined by the nature of the request. *Id.* at 343, ¶ 7.

**¶12** In *Torres*, the defendant had complained in the superior court that "he could no longer speak with his lawyer about the case, he did not trust him, he felt threatened and intimidated by him, there was no confidentiality between them, and his counsel was no longer behaving in a professional manner." *Id.* at 342, ¶ 2. The court denied the motion. *Id.* "[G]eneralized complaints about differences in strategy may not require a formal hearing or an evidentiary proceeding." *Id.* at 343, ¶ 8. However, "[i]f a defendant makes sufficiently specific, factually based allegations in support of his request for new counsel, the . . . court must conduct a hearing into his complaint." *Id.* (citations and quotations omitted). Applying this standard, the court concluded that Torres "presented specific factual allegations that raised a colorable claim that he had an irreconcilable conflict with his appointed counsel." *Id.* at 343, ¶ 9.

**¶13** Here, Boucher telephonically attended the final management conference during which his attorney moved for a continuance for Boucher to request alternate counsel.[2] The superior court denied the motion, reasoning that Boucher should have retained alternate counsel earlier. Because no allegations of an irreconcilable conflict between Boucher and his attorney were made, no *Torres* inquiry was necessary. Nor did Boucher's fax to the superior court articulate a specific basis upon which the court might be required to address the appointment of alternate counsel. Instead, it merely alleged that Boucher's attorney did not "believe in [him] nor this case." Boucher did not state any specific facts in support of these allegations except that he believed that his attorney's instructions for trial preparation were unhelpful. Indeed, the fax admitted his counsel was a good attorney and reflected that counsel had suggested Boucher go to a psychologist or counselor. The fact that such advice might not have been helpful for trial, at worst, merely shows a difference in trial strategy. Moreover, Boucher did not give the court a chance to further inquire with Boucher about these allegations because Boucher failed to appear at trial. The court considered and denied the motion, noting Boucher's absence from trial. Given the nature of Boucher's allegations and the fact that the court twice considered Boucher's motion for new counsel, it did not violate his Sixth Amendment rights.

---

[2] Boucher's attorney requested a continuance so Boucher could obtain a new attorney. Thus, the denial of the request was in effect a denial of a request for alternate counsel.

## II. Jury Instructions

**¶14** Boucher argues the superior court erred by refusing "to advise the jury prior to deliberations to not hold his voluntary absence from trial against him or infer guilt based on his absence." We review for abuse of discretion whether the trial court erred in refusing requested jury instructions. *State ex rel. Thomas v. Granville*, 211 Ariz. 468, 471, ¶ 8 (2005) (citation omitted). When addressing whether jury instructions accurately stated the law, we review de novo. *State v. Fierro*, 220 Ariz. 337, 338, ¶ 4 (App. 2011) (citation omitted). In evaluating instructions, we consider them in their entirety, *Granville*, 211 Ariz. at 471, ¶ 8 (citation omitted), and within the context of the trial, *State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989) (citation omitted) ("Appellate courts do not evaluate jury instructions out of context."). Ultimately, the inquiry is whether the "jury receive[d] the information it need[ed] to arrive at a legally correct decision." *Granville*, 211 Ariz. at 471, ¶ 8 (citation omitted).

**¶15** The crux of Boucher's argument rests on his contention the superior court implied that his failure to appear was a reflection of his consciousness of guilt. Based on this, he argues that the court erred by failing to correct this implication by refusing his request to instruct the jury not to infer guilt from his absence. However, the court's statements and actions during voir dire made clear the jury should not infer guilt from his absence. Soon after the court stated that Boucher may not appear, it explicitly stated that Boucher's absence was not evidence of guilt. The court then excused four jurors who indicated that Boucher's absence would influence their decision. Thus, the court clearly informed the jury that it should not imply guilt from Boucher's absence. We assume that juries obey their instructions. *State v. McCurdy*, 216 Ariz. 567, 574, ¶ 17 (App. 2007) (citation omitted).

**¶16** Moreover, we view the adequacy of jury instructions in light of the closing arguments. *Bruggeman*, 161 Ariz. at 510. Here, in addition to the statements made by the superior court during voir dire, Boucher's attorney addressed Boucher's absence during closing arguments. Specifically, he stated that "[w]hether or not Mr. Boucher was seated next to me the last two days or wasn't, has no bearing on what occurred . . . so please don't factor that in one way or the other." Considering the instructions in conjunction with the court's statements and actions during voir dire and defense counsel's closing argument, the jury received sufficient direction and information not to imply guilt from Boucher's absence. Thus, the court did not abuse its discretion by denying Boucher's requested instruction.

## CONCLUSION

¶17     For the foregoing reasons, we affirm Boucher's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA