NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

HENRY AUGUSTUS QUARLES, IV, *Appellant*.

No. 1 CA-CR 23-0468

FILED 11-07-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-130880-001
The Honorable Joseph Shayne Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Emily Tyson-Jorgensen
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge Daniel J. Kiley joined.

---

**B R O W N**, Judge:

¶1      Defendant Henry Quarles appeals from his conviction for second degree murder. He argues the superior court erred by (1) denying his motion for judgment of acquittal, and (2) allowing the victim's daughter to present irrelevant testimony. For the following reasons, we affirm.

## BACKGROUND

¶2      Viewing the evidence in the light most favorable to sustaining the conviction, *State v. Allen*, 253 Ariz. 306, 335, ¶ 70 (2022), the record shows that late one summer evening, Quarles and his girlfriend went to a convenience store they frequented. The store's manager was on duty. The manager's friend, victim J.A., was also there.[1] The manager spoke to Quarles about two previous incidents Quarles had with store employees.

¶3      As captured by video surveillance cameras, while at the cashier counter the manager asked Quarles, "Do you have a problem with my guys who work here?" Quarles responded that he had a "huge problem" with any man who tries to sexualize his girlfriend and that he "would kill them." Quarles and his girlfriend accused store employees of making "inappropriate" comments about Quarles's girlfriend. The manager responded that he did not want their business and asked them to leave.

¶4      The conversation intensified as the parties raised their voices and talked over each other. The manager repeated that he did not want Quarles and his girlfriend's business and asked them to leave, but they refused. The manager tried to stop the conversation, but Quarles continued to argue over him. The incident escalated when Quarles tried to grab a grocery bag on the counter and insulted the manager.

---

[1]      We refer to the victim and his daughter by using initials instead of names to protect their privacy. *See* Ariz. R. Sup. Ct. 111(i).

¶5             In response, the manager grabbed a baseball bat stored behind the counter.  Quarles began to step away and then reached into a black tote bag, which he wore over his right shoulder.  J.A. saw Quarles reaching inside the bag and started to intervene, grabbing the bottom of Quarles's bag.  J.A. then stood up and held onto the bag, preventing Quarles from reaching deeper into it.  The manager held the bat for a few seconds before he dropped it behind the counter when he saw Quarles and J.A. struggling over the bag.  J.A. managed to wrap his right arm around Quarles, hugging him from behind, and both fell to the floor.  While J.A. held Quarles face down on the floor for about 20 seconds, Quarles yelled that he was going to hurt J.A.  After briefly allowing Quarles more space to move, J.A. continued his efforts to prevent Quarles from reaching into the bag.  A few seconds later, however, Quarles was able to sit up and he shot J.A.  Several customers and employees were within several feet of the gunshot.

¶6             While still holding the gun, Quarles pulled himself away from J.A., stood up, and started collecting his belongings.  Quarles lingered in the store for about two minutes, during which he talked with his girlfriend, fixed his hair, put on a beanie, and drank water.  The manager and a customer attended to J.A.'s injury, but he died shortly thereafter.  Quarles left the store, and police arrested him later that night.  A grand jury indicted Quarles for second degree murder, a class one felony.

¶7             At trial, after the State's case-in-chief, defense counsel moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20(a)(1) ("Rule 20"), arguing the State failed to prove its case.  Defense counsel also asserted his client's actions were justified, stating that Quarles "feared for his life" and acted in self-defense after the manager approached him with a bat and J.A. grabbed him.  The State argued that whether a criminal offense is justified should not be considered in a Rule 20 motion; instead, the focus is only whether the prosecution has established the statutory elements of the crime.

¶8             The superior court denied the Rule 20 motion, explaining in part that there are multiple ways the State can prove second degree murder, and there is "substantial evidence from which the jury may reasonably conclude that the defendant is guilty of the charged offense."  The court also stated that the points raised by defense counsel "are all going to be factual issues for the jury to determine."

¶9             After the court's ruling, the court confirmed that Quarles waived his right to testify and then instructed the jury on the elements of

second degree murder as well as the lesser-included offenses of manslaughter and negligent homicide. The court also gave a self-defense instruction that outlined the circumstances for when a defendant is justified in using or threatening deadly physical force.

**¶10** The jury found Quarles guilty as charged, and the superior court sentenced him to a slightly less than presumptive term of 15 years imprisonment. Quarles timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4033(A)(1).

## DISCUSSION

### A. Motion for Judgment of Acquittal

**¶11** Quarles argues the superior court erred in denying his motion for judgment of acquittal because the State failed to present substantial evidence that Quarles committed second degree murder. We review the superior court's ruling on a Rule 20 motion de novo. *State v. Thompson*, 252 Ariz. 279, 301, ¶ 86 (2022).

**¶12** "After the close of evidence on either side . . . the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Substantial evidence exists if "reasonable persons could accept [evidence] as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Allen*, 253 Ariz. at 335, ¶ 70. Our role is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶13** A person commits second degree murder, if without premeditation, he (1) "intentionally causes the death of another person," or (2) knows that his "conduct will cause death or serious physical injury" and then causes the death of another person, or (3) "recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A). Quarles argues the State did not present substantial evidence supporting any of the three ways in which second degree murder may be committed.

¶14         On this record, a rational trier of fact could have found beyond a reasonable doubt that Quarles committed second degree murder. First, Quarles intentionally caused J.A.'s death because Quarles shouted at J.A., at least twice, "I'm going to hurt you," and Quarles followed through on those statements when he shot J.A. Second, Quarles knew that firing his gun from close-range at J.A. would cause death or serious physical injury to J.A. Third, Quarles recklessly engaged in conduct that created a grave risk that caused J.A.'s death, because a reasonable person in that situation would not fire a gun in a store filled with customers and employees, particularly when several of them were in close proximity to the gunshot.

¶15         Quarles also argues the court erred in denying his Rule 20 motion because the State was required to rebut his claim of self-defense but failed to do so. If evidence of justification, including self-defense, is "presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification." A.R.S. § 13-205(A).

¶16         The record includes evidence supporting Quarles's self-defense claim, but the State presented substantial evidence that contradicted his claim and the court properly determined that the jury should resolve the contradiction. *See State v. Haywood*, ___ Ariz. ___, ___, ¶ 36, 550 P.3d 610, 619 (App. 2024) (affirming denial of Rule 20 motion, and rejecting defendant's argument under § 13-205(A) that the State failed to show that self-defense "did not occur," because the jury could have found use of deadly force was not justified); *see also State v. Riggins*, 111 Ariz. 281, 284 (1974) ("Evidence is not insubstantial simply because the testimony is conflicting or reasonable persons may draw different conclusions therefrom."); *State v. McCurdy*, 216 Ariz. 567, 573, ¶ 14 (App. 2007) ("If reasonable persons could differ as to whether the evidence establishes a fact in issue, then the evidence is substantial."). Thus, the court did not err in denying Quarles's Rule 20 motion for judgment of acquittal.

## B.    Testimony from the Victim's Daughter

¶17         G.A. briefly testified that her father, J.A., was 72 years old when he died, owned a small business restoring classic cars, lived and worked in France for a time, was an Army veteran, and enjoyed cycling. G.A. acknowledged she was not familiar with the store where he was killed. The State then asked her about two in-life photos of J.A., the first one taken "a year or two" before he was killed and the second was from the "early 2000s." G.A. recognized the photos as accurate depictions of her father, and the superior court admitted the photos without objection.

**¶18** Quarles argues the court committed fundamental error by allowing G.A. to testify because her testimony was not relevant to "any facts at issue in the case," and even if it was relevant, the testimony was unduly prejudicial.[2] Because Quarles failed to object to the admission of this evidence at trial, we review only for fundamental error resulting in prejudice. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). To establish fundamental error, Quarles must show that "(1) the error went to the foundation of [his] case, (2) the error took from [him] a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* at 142, ¶ 21.

**¶19** Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401. Relevant evidence is generally admissible; irrelevant evidence is inadmissible. Ariz. R. Evid. 402. Also, relevant evidence may be excluded when "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403.

**¶20** The State argues that G.A.'s testimony was relevant to establish an aggravating factor for sentencing purposes, i.e., that "the victim's immediate family suffered physical, emotional, or financial harm" because of the crime. *See* A.R.S. § 13-701(D)(9). Statutory aggravating factors in a homicide case may properly be established through the testimony of the victim's family. *See State v. Coulter*, 236 Ariz. 270, 275–76, ¶¶ 13, 16 (App. 2014) (explaining that testimony from the victim's family member was sufficient for a jury to find an aggravating factor for emotional or financial harm). The jury in *Coulter* first convicted the defendant and then found an aggravating factor during the second phase of the trial. *Id.* at 272, ¶ 2. The same process should have occurred here. Quarles does not dispute that during the guilt phase G.A.'s testimony was admissible to establish J.A.'s age; however, the rest of her testimony would only have

---

[2] Quarles suggests that the photos were irrelevant and unduly prejudicial because they were presented only to gain sympathy from the jury, but he has not provided any supporting legal analysis. *See State v. Johnson*, 247 Ariz. 166, 180, ¶ 13 (2019) (declining to consider an issue that was neither developed nor supported by legal authority). Thus, he has failed to establish that any error, much less fundamental error resulting in prejudice, occurred relating to admission of the photos. *See State v. Thompson*, 252 Ariz. 279, 298, ¶ 71 (2022) (concluding that the superior court "did not abuse its broad discretion" in admitting an in-life photo of the victims even though it had only "slight relevance").

been relevant during the aggravation phase to establish relevant factors for sentencing purposes. Even so, Quarles has not met his burden of establishing fundamental, prejudicial error.

¶21 Quarles does not argue that the error deprived him of a fair trial, that the error deprived him of a right essential to his defense, or that the error went to the foundation of his case. *See Escalante*, 245 Ariz. at 142, ¶ 21. Moreover, Quarles has not met his burden of establishing he was prejudiced by the error. G.A.'s testimony about her father's life was very brief, and the jury was instructed not to "be influenced by sympathy or prejudice." *See State v. Newell*, 212 Ariz. 389, 403, ¶ 69 (2006) (recognizing the presumption that jurors follow the trial court's instructions). Quarles has not shown that without the irrelevant portions of G.A.'s testimony, "a reasonable jury could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144, ¶ 31.

## CONCLUSION

¶22 We affirm Quarles's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV